Argued and submitted September 14, 2009, decision of Court of Appeals reversed; order of Employment Appeals Board reversed, and case remanded to Employment Appeals Board for further proceedings August 5, 2010

## Robert A. McDOWELL,
*Petitioner on Review,*

*v.*

## EMPLOYMENT DEPARTMENT
and Klamath County School District,
*Respondents on Review.*

(Agency No. 07-AB-1130; CA A136061; SC S056569)

236 P3d 722

Elizabeth A. Joffe, McKanna Bishop Joffe & Arms, LLP, Portland argued the cause and filed the briefs for petitioner on review.

Cecil A. Reniche-Smith, Assistant Attorney General, Salem, argued the cause for respondent on review Employment Department. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

No appearance for respondent on review Klamath County School District.

Deborah G. Weston, Oregon Law Center, Portland, filed a brief in support of the petition for review on behalf of *amicus curiae* Oregon Law Center.

Barbara J. Diamond, Diamond Law, Portland, filed a brief on the merits in support of petitioner on behalf of *amici curiae* Oregon AFL-CIO, AFSCME Council 75, American Federation of Teachers-Oregon, Clackamas County Peace Officers' Association, Portland Fire Fighters' Association, Oregon Education Association, and SEIU Local 503, OPEU.

LINDER, J.

## LINDER, J.

In this unemployment compensation case, the Employment Appeals Board (the board) concluded that claimant was not entitled to unemployment benefits because he voluntarily left work without good cause. Claimant, on judicial review of the board's order, challenged that determination; the Court of Appeals affirmed. *McDowell v. Employment Dept.*, 222 Or App 170, 193 P3d 989 (2008). As explained below, because we conclude that claimant voluntarily left work with good cause, we reverse the Court of Appeals decision and remand to the board.

The facts, as pertinent to the issues before us, are not challenged.[1] We therefore describe the facts consistently with those found by the board and the record that supports the board's findings. *See Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995) (where agency's factual findings are not challenged, those findings are the facts for purposes of judicial review).

Claimant worked for employer, Klamath County School District, as a probationary first-year high school language arts and drama teacher. Less than six months into his job, claimant showed his senior English classes a 10-minute clip depicting a dramatic monologue from the film "Glengarry Glen Ross." The clip, which contained some profanity, was intended as a lesson about language use and misuse. Showing that film clip to the class violated employer's policy requiring preapproval by the school principal before teachers may show students films containing profanity. Employer, however, had not advised claimant of that policy and the policy was not contained in employer's handbook.

As a result of claimant's action in showing the film clip, employer placed claimant on administrative leave. On

---

[1] In the Court of Appeals, claimant successfully challenged two of the board's findings for lack of factual support in the record. Specifically, claimant asserted that the board erred by factually finding: (1) that employer's film policy—the policy that the employer believed claimant had violated—was contained in its employee handbook; and (2) that the school principal, in addition to employer's personnel director, recommended claimant's discharge. The court concluded that those findings were not supported by substantial evidence. *McDowell*, 222 Or App at 175. The Court of Appeals did not have to remand to the board for reconsideration, however, because neither finding was pivotal to the board's resolution of the issues.

February 19, 2007, the personnel director for the district informed claimant that he would be recommending claimant's discharge at the upcoming school board meeting on March 9, 2007. The personnel director also advised claimant that he had the option to resign instead of being discharged. The personnel director did not give claimant any information as to whether he would have the opportunity to be heard at the board meeting. Claimant sought advice from his union representative and a union attorney. The union attorney told claimant that "there was absolutely no chance that the school board would overrule a recommendation from the district." The union attorney therefore advised claimant to resign before being discharged. Claimant did so on March 9, 2007, the day on which the school board would have considered whether to discharge him.

Claimant later sought unemployment benefits. The Employment Department (department) denied benefits on the ground that claimant had been "discharged for misconduct." Claimant requested and received a hearing before an administrative law judge (ALJ). The employer did not appear at that hearing. The ALJ denied benefits on an alternative legal basis—*i.e.*, that claimant had "voluntarily left work without good cause." Claimant appealed to the board. The board determined, contrary to the department's determination, that claimant had not engaged in any misconduct. However, the board further determined, as had the ALJ, that claimant had not been discharged and, instead, had voluntarily left work. Consistently with the ALJ's order, the board concluded that, in voluntarily leaving work, claimant did so without good cause. The board therefore affirmed the denial of unemployment benefits to claimant.

On judicial review, the Court of Appeals affirmed. *McDowell*, 222 Or App at 172. The Court of Appeals first concluded that the board had correctly analyzed the case as one involving a voluntary separation from work, not a discharge, reasoning that "[c]laimant, not employer, ended the employment relationship." *Id.* at 173. The court further concluded that the board had correctly determined that claimant voluntarily left work without "good cause." *Id.* at 174. The court reasoned that claimant had a statutory right to a hearing at which he could have argued against the personnel director's

recommendation. *Id.* at 174-75. Thus, according to the Court of Appeals, claimant had a reasonable alternative to voluntarily leaving work. *Id.* at 175. Claimant petitioned for review, and we allowed the petition.

On review in this court, claimant argues, first, that his separation from work should have been analyzed as a discharge rather than a voluntary leaving—a so-called "voluntary quit." In support of that contention, claimant urges that his separation was not voluntary, because he resigned in the face of an imminent discharge. Alternatively, claimant contends that, because he left work within 15 days of the date that employer notified him that he would be discharged for reasons other than misconduct, ORS 657.176(7) required claimant's separation from work to be treated as a discharge, even if it would otherwise be considered a voluntary quit. As an alternative to both of those arguments, claimant urges that, if his separation from work is adjudicated as a voluntary quit rather than a discharge, he had good cause for resigning. In particular, according to claimant, he had no reasonable alternative to leaving work, given the proposed discharge and the circumstances that confronted him.

■■ We begin with an overview of the legal standards that apply to this case, which derive from a combination of statutory provisions and implementing administrative rules. A claimant is disqualified for unemployment benefits if, as pertinent in this case, the claimant was "discharged for misconduct connected with work" or "[v]oluntarily left work without good cause." ORS 657.176(2)(a), (c). Thus, the initial question is whether the employer discharged the claimant or the claimant voluntarily quit.[2] Under the department's rules,

---

[2] Among other reasons why it might matter how the separation is classified, the burden of proof may differ. No statute specifically assigns the burden of proof on these issues. The general rule for allocating the burden of proof in administrative cases is that the burden falls on "the proponent of a fact or position, the party who would be unsuccessful if no evidence were introduced on either side." *Harris v. SAIF*, 292 Or 683, 690, 642 P2d 1147 (1982); ORS 183.450(2) (burden of production in contested cases rests on the proponent of the fact or position). Long-standing Court of Appeals decisions hold that a claimant has the burden of proving by a preponderance of the evidence that, when he voluntarily left work, he did so with "good cause," while an employer has the burden of proving that a discharge was for misconduct. *See, e.g., Babcock v. Employment Div.*, 25 Or App 661, 664, 550 P2d 1233 (1976) (burden of proving claimant's misconduct rests on the employer); *Brotherton v. Morgan*, 17 Or App 435, 438-39, 522 P2d 1210 (1974) (burden of proof on

none of which is challenged here, a separation from work is a discharge "[i]f the employee is willing to continue to work for the same employer for an additional period of time but is not allowed to do so by the employer." OAR 471-030-0038(2)(b). Conversely, the separation from work is a voluntary quit if "the employee could have continued to work for the same employer for an additional period of time[.]" OAR 471-030-0038(2)(a). A potential exception to those definitions arises, however, for an employee who resigns in lieu of being discharged. Even if the separation from work qualifies as a voluntary quit, it is adjudicated as a discharge if: (1) the employer has notified an individual that he or she will be discharged on a specific date; (2) the discharge would not be for work-related misconduct; (3) the individual voluntarily left work without good cause before the date of the impending discharge; and (4) the voluntary quit occurs no more than 15 days before the date of the impending discharge. ORS 657.176(7).[3]

Once that initial issue is resolved, entitlement to benefits turns on the reasons for the discharge or the voluntary quit. For a discharge, that focus is on whether the discharge was for misconduct in connection with work. As used

claimant to prove good cause for voluntarily leaving). The allocation of the burden of proof on those issues is not a dispute in this case.

[3] ORS 657.176(7) provides, in part:

"[W]hen an employer has notified an individual that the individual will be discharged on a specific date and it is determined that:

"(a) The discharge would not be for reasons that constitute misconduct connected with the work;

"(b) The individual voluntarily left work *without good cause* prior to the date of the impending discharge; and

"(c) The voluntary leaving of work occurred no more than 15 days prior to the date of the impending discharge,

"then the separation from work shall be adjudicated as if the voluntary leaving had not occurred and the discharge had occurred. However, the individual shall be ineligible for benefits for the period including the week in which the voluntary leaving occurred through the week prior to the week in which the individual would have been discharged."

(Emphasis added.)

For a claimant who leaves work *with* good cause, the statute is unnecessary, because that claimant is entitled to benefits on that basis from the date of her or his separation from work. Thus, the statute applies only to someone whose voluntary separation is for reasons other than good cause.

in this context, misconduct is a heightened standard, one that requires more than mere neglect or ineptness in performing a person's work. Instead, under the department's rule, "misconduct" requires "a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee" or "[a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest." OAR 471-030-0038(3)(a).

■  For a voluntary quit, the focus is on whether the claimant left work with good cause. Under OAR 471-030-0038(4),

> "[g]ood cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. * * * [F]or all individuals, the reason must be of such gravity that the individual has no reasonable alternative but to leave work."

Thus, good cause under the rule is an objective standard that asks whether a "reasonable and prudent person" would consider the situation so grave that he or she had no reasonable alternative to quitting.

With that legal backdrop in place, we turn to claimant's first argument—whether his separation from work properly should be adjudicated as a discharge or a voluntary leaving. As earlier noted, the department determined that the employer discharged claimant, and further determined that the discharge was for misconduct. The board disagreed with the department's misconduct determination and concluded that the personnel director's reasons for recommending that claimant be discharged did not satisfy the legal standard for misconduct. The board did not, however, agree that claimant's separation from work was a discharge. It determined, instead, that claimant voluntarily terminated the employment relationship. The Court of Appeals, as we have described, agreed with the board. Claimant takes issue with that conclusion, arguing that claimant had no intention of leaving his job, and did so only after the employer threatened him with a discharge; his leaving, therefore, was not "voluntary."

■   We need not resolve that issue to decide this case, however. There is no dispute that, if claimant was discharged, the discharge was not for disqualifying misconduct. The board, as we have described, so concluded. The record amply permits that conclusion. Claimant was unaware of any policy against showing films containing profanity without first obtaining permission from the principal. The employer's written policy manual contained no such policy and the employer did not orally advise claimant of such a policy. Consequently, claimant's showing of the film was neither a willful nor wantonly negligent violation of any employer policy. Thus, if claimant's separation were to be considered a discharge, the discharge would not be for misconduct, and claimant would be entitled to unemployment compensation. The department, which did not appear in the Court of Appeals but has done so on review before this court, does not contend otherwise.

■   Consequently, the essential dispute is whether, if claimant's separation was a voluntary quit, claimant left work with good cause. As we explain below, we conclude that, in these circumstances, claimant had good cause for resigning when he did. Because of that conclusion, claimant is entitled to benefits regardless of how we might resolve the discharge versus voluntary quit issue. We therefore turn to whether, if claimant quit voluntarily, he did so with good cause.[4]

---

[4] Under the pertinent statutes and administrative rules, were we to conclude that claimant voluntarily quit without good cause, the analysis would not end with that conclusion. We would then need to consider whether ORS 657.176(7) (resignation in lieu of discharge is adjudicated as discharge in certain circumstances) applies. Here, claimant maintains that it does, and he was entitled to benefits under it. The department disagrees, arguing that the statute requires an employee to be notified that the employee will, in fact, be discharged on a date certain, and here, the personnel director told claimant only that the personnel director would recommend on a particular date that the school district discharge claimant. According to the department, such a recommendation does not trigger the statute. The board, having concluded that claimant's separation from work was a voluntary quit, and having further determined that he did so without good cause, should have gone on to consider whether, as claimant urged, he was nevertheless entitled to benefits under ORS 657.176(7). It did not do so. The Court of Appeals, having also determined that claimant quit voluntarily without good cause, should have considered that statute and possibly remanded the case to the board for that purpose. Because we conclude that claimant's separation from employment was with good cause, however, the statute does not come into play.

■■  "Good cause" is a delegative term that the department has authority to interpret and refine by rule. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 228-29, 621 P2d 547 (1980). As noted, the general test for good cause under the department's rule is whether "a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." OAR 471-030-0038(4). The test further requires that the reason for leaving "be of such gravity that the individual has no reasonable alternative but to leave work." *Id.* In addition to setting out that general test for what constitutes good cause, the department by rule also has identified particular circumstances or reasons for leaving work that are not good cause. Pertinent to this case, OAR 471-030-0038(5)(b)(F) states that "[l]eaving work without good cause includes, but is not limited to: Resignation to avoid what would otherwise be a discharge *for misconduct* or potential discharge *for misconduct*[.]" (Emphases added.) Thus, the department's policy is that resigning to avoid a discharge or potential discharge *for misconduct* is not good cause for voluntarily leaving work. But that rule is limited to a resignation in lieu of a discharge or potential discharge "for misconduct." Necessarily, then, the department has left open the possibility that, when a resignation is in anticipation of a discharge not for misconduct, the separation from work may qualify as voluntarily leaving work for good cause.

Here, as discussed, claimant's prospective discharge, if it had occurred, would not have been for misconduct. Accordingly, OAR 471-030-0038(5)(b)(F) does not disqualify claimant from receiving benefits. Claimant's entitlement to benefits therefore turns on the test for a voluntary quit generally: whether a reasonable person of normal sensitivity, exercising ordinary common sense, would have considered the circumstances to be sufficiently grave that he or she had no alternative but to resign. As we outline below, the board's factual findings, and the evidence in the record that supports those findings, required the good cause determination to be resolved in claimant's favor.

■  On this record, it is beyond dispute that the consequences of a discharge for claimant were grave. In his testimony before the ALJ, claimant explained that he quit when

he did because he had "hopes of teaching again one day and to have that on [his] record would be * * * a kiss of death." Claimant knew, from his experience in the field of education, that "there's a very serious cloud over anyone who's been actually fired." Claimant in fact had served on hiring committees in the past and, in the course of doing so, had observed instances in which the deciding factor in declining to hire an applicant was a past discharge on the applicant's record. The board specifically found from that evidence that "[c]laimant believed that his prospects of finding other work as a teacher would be jeopardized if he were discharged."[5]

Claimant's belief in that regard was, moreover, corroborated by his employer. The board found, again based on claimant's testimony, that when the personnel director told claimant that he was going to recommend that the school board discharge claimant, the personnel director also advised claimant that he could resign instead. That advice signaled the employer's awareness of or sensitivity to the serious professional stigma that claimant might suffer after a discharge. At a minimum, a reasonable and prudent person likely would take the employer's comments to be tacit encouragement to quit in lieu of being discharged to spare the person the repercussions of a discharge on future employment opportunities.

In concluding that claimant voluntarily left work without good cause, the board in no way discounted the strength of claimant's belief that a discharge would be "a kiss of death" to his future employment. Nor did the board question the reasonableness of that belief. Rather, the board focused only on the likelihood of claimant's prospective discharge. The board characterized claimant as "fac[ing] a mere possibility of discharge." The board reasoned that, because employer's personnel director had not yet recommended claimant's discharge to the school board and the school board

---

[5] The employer made no appearance before the ALJ. Thus, no evidence rebuts or contradicts claimant's testimony in that regard. The board was not obligated to believe claimant, despite the lack of any contrary evidence, assuming it could articulate substantial reasons for rejecting claimant's uncontradicted testimony (*e.g.*, lack of credibility, inherent unbelievability, etc.). *See generally City of Portland v. Bureau of Labor and Ind.*, 298 Or 104, 116, 116 n 6, 690 P2d 475 (1984) (where credibility of witnesses is concerned, trier of fact is not necessarily bound by uncontradicted testimony, for trier of fact may simply not believe a witness). But here, the board *did* believe claimant, and found facts consistently with claimant's testimony.

had not yet voted to discharge claimant, a reasonable and prudent person would not have left work rather than face the prospect that the employer "might" discharge him at some point in the future. The board also reasoned that claimant had legal remedies available to him to challenge the discharge decision and, as a result, his discharge was "not a foregone conclusion." In our view, however, the board's reasoning was flawed.

To characterize claimant as facing a "mere possibility of discharge" cannot be squared with the facts found by the board. The board believed claimant's testimony that the personnel director—who, by virtue of his position, must be assumed to have had significant chain-of-command responsibility for hiring and firing decisions—told claimant that he would recommend claimant's discharge to the school board at its upcoming meeting. The board also accepted claimant's testimony that the union's attorney told him that "there was absolutely no chance that the school board would overrule a recommendation from the district." The board found that claimant in fact "believe[d] * * * that he would be discharged by the employer on March 9." The board did not find that claimant's subjective belief was unreasonable or suggest that a prudent person exercising ordinary common sense in claimant's situation—*viz.*, an employee who was advised by his union and union attorney that there was "absolutely no chance" that the school board would not discharge him— would have believed that his discharge was a "mere possibility."

Instead, the board's characterization appears to have been prompted by its view that the evidence did not establish that the school board in fact would have discharged claimant on March 9. The board reasoned that claimant had legal rights and remedies to avoid a discharge, and that a reasonable person would have pursued them before voluntarily separating from gainful employment. In particular, the board pointed to ORS 342.835 and stated that "Oregon law provided claimant with recourse, including the right to be given a copy of the reasons for dismissal, the right to representation and to be heard by the board, and the right to appeal a dismissal decision for procedural errors." Later in the decision, the board emphasized that, under Oregon law,

the school district "could not have discharged [claimant] without a hearing." The Court of Appeals reasoned similarly, pointing out that claimant had a statutory right to be heard *before* the school board would have taken action to discharge claimant. *See McDowell*, 222 Or App at 174-75 (ORS 342.835 guarantees claimant a hearing at which he could have argued against the personnel director's recommendation).

Claimant urges, however, that both the board and the Court of Appeals were wrong about the *predismissal* remedies to which claimant was legally entitled. Claimant, who left his job in the first year of his employment, was a probationary teacher.[6] According to claimant, he therefore was not entitled under ORS 342.835(1)[7] to a predismissal hearing at all. Instead, claimant understands the statute to provide a probationary teacher with only *postdismissal* notice and opportunity to be heard, thus giving him a chance to contest the dismissal only after the fact. In addition, claimant points out that, under the statute, a probationary teacher may be dismissed "at any time" and "for any cause considered in good faith sufficient," thus providing a probationary teacher with little substantive ground to contest a dismissal at the school district level. Finally, claimant emphasizes that, under subsection (3) of the statute, an appeal to circuit court would permit only procedural challenges, so that a probationary

---

[6] *See* ORS 342.815(6) ("probationary teacher" is a teacher who is not a contract teacher); ORS 342.815(3) ("contract teacher" is any teacher who has been regularly employed by a school district for a probationary period of three successive school years, and who has been retained for the next succeeding school year).

[7] ORS 342.835 provides, in part:

"(1) The district board of any fair dismissal district may discharge or remove any probationary teacher in the employ of the district at any time during a probationary period for any cause considered in good faith sufficient by the board. The probationary teacher shall be given a written copy of the reasons for the dismissal, and upon request shall be provided a hearing thereon by the board, at which time the probationary teacher shall have the opportunity to be heard either in person or by a representative of the teacher's choice.

"* * * * *

"(3) If an appeal is taken from any hearing, the appeal shall be to the circuit court for the county in which the headquarters of the school district is located and shall be limited to the following:

"(a) The procedures at the hearing;

"(b) Whether the written copy of reasons for dismissal required by this section was supplied[.]"

teacher's judicial remedies are particularly limited. *See Henthorn v. Grand Prairie School Dist.*, 287 Or 683, 692, 601 P2d 1243 (1979) (interpreting ORS 342.835 to provide that the appeal is by writ of review, which review is limited to the procedures used in the dismissal process).

To assess whether claimant resigned with or without good cause, we need not decide if claimant is correct about what *pre*dismissal remedies are available to a probationary teacher under ORS 342.835(1). Nor need we determine whether, had claimant been offered a predismissal hearing, his decision to resign when he did would constitute good cause, given the limited grounds on which he could have contested the personnel director's discharge decision. Here, it is enough to conclude that the school district did not offer claimant a predismissal opportunity to be heard. The board found that claimant was told by the personnel director why the director would be recommending discharge to the school board. Claimant's testimony, on which that finding was necessarily based, was that the personnel director gave him that information orally. As claimant described and the board found, claimant waited until the last possible moment—the day of the school board meeting—to tender his resignation. Claimant testified that he was never told anything about whether he could be heard at the school board meeting in which the discharge decision would be made. Thus, the only conclusion that is permissible, given the board's findings and the record support for them, is that the school district did not give claimant the written notice that ORS 342.835(1) requires, which would have triggered his right to a hearing. The school district instead was prepared to proceed with the discharge decision without giving claimant any *predismissal* notice or hearing procedures.[8] Thus, on this record, the right to a hearing under ORS 342.835(1) was not a means by which claimant could avoid the discharge. The board's reliance on that statute in this case therefore was misplaced, as was that of the Court of Appeals.

---

[8] The statute, as our earlier quotation of it reflects, is silent on the timing of the written notice and opportunity for a probationary teacher to be heard. Thus, a reasonable person could not know from the terms of the statute itself the timing of any remedies available to a probationary teacher.

■■■■■ Given the board's reasoning, it is worth emphasizing the objective standard that applies to these cases. When, as here, an employee is facing a prospective discharge, whether resigning in lieu of that prospective discharge is for "good cause" depends not on a hindsight determination of whether, in fact, claimant would have been discharged by the school board. The issue depends, instead, on whether a reasonable person facing that prospect of discharge would consider the prospect so grave a circumstance that resigning was the only reasonable option. That objective inquiry depends on what claimant in fact knew and reasonably should have known when he made his decision, not on an assessment of how events in fact would have played out.[9]

In light of the facts found by the board, and the record that supports those facts, this case reduces to this: Claimant believed that being discharged would create serious problems for him in obtaining future employment. Under the circumstances, that belief was reasonable, and the board did not conclude otherwise. Claimant also believed, based on his union's attorney's advice, that the school board would follow the personnel director's discharge recommendation— that is, according to the advice claimant received, there was "absolutely no chance" that the school district would overrule the personnel director's recommendation. The school district could legally dismiss claimant, given his probationary status, at any time and for any good faith reason. Claimant thus could legally contest his discharge on only the most narrow substantive grounds. And he had no ability to do so predismissal—the school district made no overture to provide him with any dismissal remedies in advance of the meeting in

---

[9] In a footnote in its decision in this case, the board noted that it has "consistently held that where, as here, a claimant voluntarily leaves work rather than face the possibility of future discharge, Oregon law requires a disqualification from benefits." To the extent that the board has suggested, in this or any other case, that a future discharge must be "certain" before a resignation to avoid the discharge can qualify as good cause, such a conclusion would be inconsistent with the "reasonable and prudent person" standard in place. Under the applicable statutes and administrative rules, the question must be whether, given the circumstances as a whole, the situation facing the employee was sufficiently grave that the employee had no reasonable alternative to leaving employment. The likelihood of a prospective discharge logically bears on the gravity of the situation. But the fact that a threatened discharge is less than certain to occur, and the fact that the discharge, after it occurs, is not irreversible, are not factors that are dispositive, in and of themselves.

which a discharge decision would be made. Finally, as the board recognized, claimant's judicial remedies were very limited—in a circuit court appeal, he could raise only procedural objections.

Under those circumstances, would a reasonable and prudent person, of normal sensitivity and exercising ordinary common sense, believe that he faced such a grave situation that leaving work was the only reasonable course for him to take? The only permissible answer to that question on this record is yes. The board, as a matter of law, given its findings of fact and its reasoning, was obligated to so conclude. As a result, the board should have determined that claimant voluntarily left work with good cause and should have awarded claimant unemployment benefits.

The decision of the Court of Appeals is reversed. The order of the Employment Appeals Board is reversed, and the case is remanded to the Employment Appeals Board for further proceedings.