Argued and submitted September 2, 2010, affirmed April 6, 2011

Jennifer L. DUBROW,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Oregon Parks & Recreation Department,
*Respondents.*

Employment Appeals Board
09AB2634; A143488

252 P3d 857

Kevin Keaney argued the cause and filed the brief for petitioner.

Tiffany Keast, Assistant Attorney General, argued the cause for respondents. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

In this unemployment compensation case, the Employment Appeals Board (board) concluded that claimant was not entitled to unemployment benefits because she left work without good cause. Claimant challenges that determination on judicial review. We affirm because we conclude that the board's finding that claimant quit work to avoid discharge is supported by substantial evidence, and the board's conclusion that claimant voluntarily left work without good cause is supported by substantial reason. ORS 657.282; ORS 183.482(8).

The board found the following facts:

"(1) Claimant worked for [the] Oregon Parks & Recreation Department as a human resources analyst from July 10, 2006 to May 1, 2009.

"(2) In 2008, claimant underwent treatment for breast cancer. Claimant complained to supervisors about the behavior of her co-workers after she returned to work from medical leave, but the matter was not resolved. In December 2008, claimant filed a formal complaint with the department director, alleging discrimination and hostile working conditions. The employer investigated one of the incidents claimant reported, but was not able to confirm it. The employer notified claimant on December 31, 2008 that it did not intend to pursue her complaint.

"(3) From January 2, 2009 through March 29, 2009, claimant was absent from work on medical leave due to a concussion. While she was on leave, the employer imposed disciplinary actions for incidents that had occurred prior to and during the time she was stationed at home in December 2008. After claimant's attorney talked to the employer, the employer rescinded a demotion and economic sanctions, then reinstated them after it conducted a pre-disciplinary hearing. Claimant appealed to the Oregon Employment Relations Board and also filed an EEOC complaint with the Oregon Bureau of Labor and Industries.

"(4) Claimant returned to work part time on March 30, 2009. Her co-workers engaged in additional conduct that she considered to be harassing and hostile in nature, but claimant's manager did not take action. The manager assigned claimant duties that claimant considered to be

retaliatory in nature. Claimant sent an email to her supervisor stating that she intended to address her concerns through legal channels. Her supervisor replied that claimant had engaged in insubordinate behavior by arguing about work assignments and other issues.

"(5)   On April 6, 2009, claimant and her supervisor exchanged a series of contentious email messages. On April 7, the employer placed claimant on paid administrative leave 'pending an investigatory meeting and further disciplinary action.' * * * Claimant's supervisor ordered her to collect her things and leave the building immediately. On April 8, 2009, the employer sent claimant all personal items she had left in her work station. Claimant was certain that the employer intended to discharge her after the investigatory meeting.

"(6)   Claimant underwent continuing treatment and monitoring for breast cancer. On April 10, 2009, claimant told her oncologist about her employment situation. Claimant's oncologist said that claimant needed to leave work if she could. Claimant was aware that stress could contribute to the recurrence of cancer. However, she did not resign from her job. She had not decided whether she wanted to attend the investigatory meeting.

"(7)   The employer notified claimant that the investigatory meeting was scheduled for May 1, 2009. On May 1, 2009, claimant instructed her attorney to submit her written resignation, effective immediately."

In addition, the board found that "the timing of [claimant's] resignation indicated that she quit work when she did in order to avoid being discharged following the meeting"; and that claimant "failed to show that the possibility [that employer would terminate claimant's employment] was so serious she could not risk attending the meeting and responding to any charges against her, in order to retain her job pending the outcome of her legal actions." Accordingly, the board ordered claimant disqualified from receiving employment insurance benefits because she did not have good cause to voluntarily leave work.

On judicial review, claimant assigns error to the board's order denying unemployment benefits. Claimant concedes that she voluntarily left work. However, she contends

that the board's finding that she left work to avoid discharge is not supported by substantial evidence; rather, claimant argues that she left work because the work environment had become so stressful that continuing to work for employer increased the risk that her breast cancer would recur. Furthermore, claimant argues that when she left work due to that risk, she did so for good cause.

We begin with an overview of the legal standards that apply to this case. When an individual voluntarily leaves work without good cause, the individual is disqualified from unemployment benefits. ORS 657.176(2)(c). Where, as here, claimant voluntarily left work, the issue is whether claimant had "good cause" for doing so. OAR 471-030-0038(4) provides:

> "Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. For an individual with a permanent or long-term 'physical or mental impairment' (as defined at 29 CFR § 1630.2(h)) good cause for voluntarily leaving work is such that a reasonable and prudent person with the characteristics and qualities of such individual, would leave work. Except as provided in OAR 471-030-0038(5)(g), for all individuals, the reason must be of such gravity that the individual has no reasonable alternative but to leave work."

Claimant had breast cancer, which the parties agree is a long-term "physical impairment" as defined at 29 CFR section 1630.2(h).[1] Therefore, the test is whether a reasonable and prudent person with the characteristics and qualities of an individual with breast cancer would voluntarily leave

---

[1] 29 CFR § 1630.2(h) provides:

*"Physical or mental impairment* means:

"(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

"(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."

(Emphasis in original.)

work based on the belief that she had no reasonable alternative but to leave work. In this case, we first focus on the reason claimant left work—to avoid a discharge, as the board found, or for health reasons, as claimant argues—and then we consider whether substantial reason supports the board's conclusion that claimant left work without good cause.

Claimant's reason for leaving work is a question of fact. *See McPherson v. Employment Division*, 285 Or 541, 548, 591 P2d 1381 (1979) ("[T]he claimant's reasons for quitting her employment and the events that led up to them are questions of fact."). We review the board's findings of fact for substantial evidence. ORS 183.482(8)(c). In reviewing for substantial evidence, we do not substitute our own view of the evidence for the board's view of the evidence. *See Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990) (appellate courts should not reject the board's view of the evidence and impose their own).

Claimant presented the board with differing reasons for leaving work. On one hand, she testified that employer intended to discharge her from employment after conducting the investigatory meeting. On the other, claimant testified that her doctor warned her about adverse health effects if she stayed in a stressful environment and that her work environment was stressful. The board considered claimant's testimony to be inconsistent, and resolved that testimony by examining her conduct, which it concluded was "incompatible with her implied assertion that she had to quit work based on her doctor's advice. * * * Instead, the timing of her resignation indicated that she quit work when she did in order to avoid being discharged following the meeting." Accordingly, the board rejected claimant's contention that she left work because of possible health risks. Claimant argues that the board should not have resolved her testimony as it did, but that is not the question before us. The question before us is whether the record reasonably supports the factual finding the board actually made. *Sen v. Employment Dept.*, 218 Or App 629, 634, 180 P3d 95 (2008). There is evidence in the record supporting the board's factual finding that claimant left work to avoid discharge and not because of possible health risks. Accordingly, we conclude that substantial evidence supports the board's finding that claimant voluntarily left work to avoid a discharge.

We next consider whether, in light of the board's finding that claimant voluntarily left work to avoid a discharge, substantial reason supports the board's conclusion that claimant left work without good cause. After the parties submitted their briefs, but before oral argument, the Supreme Court decided *McDowell v. Employment Dept.*, 348 Or 605, 236 P3d 722 (2010). In *McDowell*, the Supreme Court reversed the board's order denying unemployment benefits. The board had concluded that the claimant voluntarily left work without good cause. The claimant petitioned for judicial review, and we affirmed. We reasoned that the claimant was not certain that he would lose his job, because he was entitled to a predischarge hearing at which he could argue against his impending discharge. *Id.* at 609-10. We concluded that the claimant, a teacher, had a reasonable alternative to leaving work—that is, the claimant could have attended the hearing to which he was entitled. The Supreme Court rejected our reasoning. First, it identified "the essential dispute" to be whether, "if [the] claimant's separation was a voluntary quit, [the] claimant left work with good cause." *Id.* at 613. Second, the Supreme Court assumed that the claimant voluntarily left work, and considered whether the claimant carried his burden of proving that he voluntarily left work for good cause. *Id.* at 610 n 2, 613-20. It concluded that the claimant faced discharge without any opportunity for a predischarge hearing. *Id.* at 618. Next, the Supreme Court identified the operative facts: The claimant was a teacher, faced certain discharge, was not offered a predischarge hearing, and knew that discharge from a teaching job made finding another teaching job nearly impossible. Finally, on those facts, the Supreme Court held that a reasonable person would conclude that leaving work was "the only reasonable course * * * to take." *Id.* at 619-20.

We granted the parties leave to brief the applicability of *McDowell* in this case. Not surprisingly, claimant argues that *McDowell* is on point and requires reversing the board's order; the department, of course, argues that *McDowell* is distinguishable and does not require reversal. We agree with the department.

In *McDowell*, the Supreme Court first rejected this court's conclusion that the claimant could avoid discharge by attending a predischarge hearing; the Supreme Court

emphasized the dire career consequences that a discharge would have had on the claimant's teaching career, describing it as a "kiss of death" to the claimant's future employment prospects as a teacher. *Id.* at 615; *see also id.* at 614 ("[I]t is beyond dispute that the consequences of a discharge for [the] claimant were grave."). Further, the Supreme Court concluded that, on the facts before the board, the claimant knew that he would have certainly been discharged. *Id.* at 618. Here, unlike in *McDowell*, an investigatory meeting was scheduled so that claimant and employer could discuss the conflicts claimant was experiencing at work. That is to say, employer provided claimant an opportunity to advocate for her interests before employer took further adverse measures. Moreover, claimant was not facing discharge before that investigatory meeting. Nor was there evidence, other than her own suspicion, that claimant necessarily would have been discharged after the investigatory meeting. Thus, this case is readily distinguishable from *McDowell*, because claimant has not produced sufficient evidence to show that she faced the certain discharge and dire consequences from a discharge that left the claimant in *McDowell* with no reasonable course of action but to leave work.[2]

The board reasoned that "a reasonable and prudent person with the characteristics and qualities of an individual with breast cancer would not have quit work based on unconfirmed assumptions that the employer intended to discharge her." That conclusion properly applies the facts of this case to the board's definition of good cause under OAR 471-030-0038(4). Thus, the board's conclusion that claimant voluntarily left work without good cause is supported by substantial reason.

Affirmed.

---

[2] In concluding that claimant left work without good cause, we are cognizant that a future discharge need not be certain before a resignation to avoid a discharge can qualify as good cause. *See McDowell*, 348 Or at 619 n 9 (so stating). But, "[t]he likelihood of a prospective discharge logically bears on the gravity of the situation." *Id.* Thus, we conclude that claimant left work without good cause because she faced a discharge that was not certain and she did not face the dire consequences that left the claimant in *McDowell* with no choice but to leave work.