Submitted on remand from the Oregon Supreme Court January 3, reversed and remanded May 25, 2011

Julee L. REYNOLDS,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Oregon Liquor Control Commission,
*Respondents.*

Employment Appeals Board
07AB0676; A135718

259 P3d 50

Roger Hennagin and Roger Hennagin, P.C. for petitioner.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, for respondent Employment Department.

Richard Wasserman, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Oregon Liquor Control Commission.

Before Ortega, Presiding Judge, Sercombe, Judge, and Rosenblum, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Claimant seeks judicial review of a final order of the Employment Appeals Board denying her claim for unemployment benefits. After we affirmed without opinion, the Supreme Court vacated our decision and remanded for reconsideration in light of *McDowell v. Employment Dept.*, 348 Or 605, 236 P3d 722 (2010). For the reasons set forth below, we now reverse and remand for reconsideration.

Under ORS 657.176(2)(a) and (c), an individual is disqualified from receiving benefits if she "[h]as been discharged for misconduct connected with work" or "[v]oluntarily left work without good cause."[1] In determining eligibility for unemployment benefits, the initial question is whether a claimant was discharged or voluntarily quit. After that question is resolved, the claimant's entitlement to benefits depends on the reason for the discharge or voluntary quit: A claimant who was discharged is disqualified if the discharge was for misconduct, and a claimant who voluntarily quit is disqualified if the claimant left work without good cause. *McDowell*, 348 Or at 610-12.[2]

With that framework in mind, we turn to the board's factual findings, which we review for substantial evidence. ORS 657.282; ORS 183.482(8). The following facts are undisputed or, if disputed, are supported by substantial evidence. Claimant, out of curiosity, accessed and read several coworkers' e-mails. She admitted to employer's human resources director that she had done so. Although the director said that claimant had done "a really bad thing," claimant believed that employer did not have a policy that prohibited reading other employees' e-mails and, when she inquired, the director did not identify such a policy.[3] Although the director told

---

[1] Although ORS 657.176 has been amended during the period since claimant's employment ended, the cited paragraphs remain unchanged.

[2] In *McDowell*, the court did not have to resolve the initial question of discharge or voluntarily leaving work. In that case, in light of the board's findings, the claimant was entitled to unemployment benefits regardless of whether he was discharged or voluntarily quit. If the claimant was discharged, the discharge was not for disqualifying misconduct. Alternatively, if he voluntarily quit, he did so with good cause. 348 Or at 613.

[3] The record contains a copy of employer's computer use policy, which "limits use of electronic mail to official State business with minor exceptions * * *.

claimant that she would be discharged if she did not quit, claimant sincerely believed that her discharge was unwarranted. Claimant was a union member, and employer had a progressive discipline policy. If she were discharged, claimant could file a grievance to seek reinstatement, but she did not want to risk losing and have a discharge on her employment record. Consequently, claimant quit in order to avoid a discharge.

The Employment Department's authorized representative concluded that claimant was discharged for misconduct. After a hearing, an administrative law judge (ALJ) concluded that claimant did not engage in misconduct but did voluntarily leave work without good cause. The board did not reach the misconduct issue but, like the ALJ, concluded that claimant had voluntarily quit:

> "The employer's human resources director told claimant the employer would discharge her [from] employment if she did not resign. However, the human resources director did not tell claimant that the employer would discharge her immediately if she did not resign. The record failed to show that claimant could not have continued to work for the employer for some additional period of time if she had not resigned. The record showed employer had a progressive discipline policy, which claimant could have utilized for some additional period of employment, at which time perhaps she would not have been discharged."

The board further concluded that claimant lacked good cause because "[a] reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would not have quit work to avoid a discharge that she sincerely believed was unwarranted, and that she had the right to grieve." In a footnote to that statement, the board added, "To any extent that claimant quit to avoid a potential discharge for misconduct, she did not have good cause. OAR 471-030-0038(5)(b)(F)."

---

[Employer] may inspect any e-mail on our equipment at any time. **There is no expectation of privacy for e-mail.** * * * [Employer] reserves sole discretion to decide what information is a public record." (Boldface in original.) The policy identifies the network administrator and the administrative services director as the employees with responsibility for monitoring e-mail use and reporting violations of the technology policy. According to claimant's testimony, her job title was Compliance Specialist III/Trading Analyst. The board made no findings regarding that policy.

Claimant challenges the board's finding that, under employer's progressive discipline policy, she could have remained employed for some additional time and ultimately might not have been discharged. Although claimant conceded in her opening brief that her claim of error was not preserved, our review of the record shows that she did, in fact, preserve the error. The ALJ found that claimant severed the employment relationship in order "to avoid a discharge or, because [claimant's] employment was covered by a collective bargaining agreement and a union represented her, at least a potential discharge." In her written argument to the board, claimant contended that the ALJ implicitly found "that claimant might have been able to work a few more days while the recommendation for discharge was pending in agency hierarchy and had not been acted upon. There is nothing in the record to support such a conclusion."

We turn, then, to the question of whether substantial evidence supported the finding that, under employer's progressive discipline policy, claimant could have remained employed for some additional period of time. The only evidence in the record concerning that policy is claimant's testimony that there was a collective bargaining agreement and "a progressive discipline policy. I believe there is something in the policy—the contract that says that if [employer] thinks the act is so egregious that they can dismiss without—or they can jump to a higher level of discipline." She also testified that she did not know if any procedures were required for a dismissal. The board could disbelieve that testimony, *see McDowell*, 348 Or at 615 n 5 (noting that the board is not required to accept uncontradicted testimony if it can articulate substantial reasons to reject the testimony), but there was no evidence in the record that would allow the board to find that the progressive discipline policy provided for a delay in termination or required any procedures to be used before a dismissal. Although there was evidence that such a policy existed, there is no evidence that claimant could have used it to remain employed for a longer period. Because that finding was pivotal to the board's determination that claimant voluntarily quit, we must remand for reconsideration. On reconsideration, it remains to be determined whether, on the facts

found by the board, claimant engaged in misconduct that would cause her to be disqualified from benefits.

Reversed and remanded.