Argued and submitted April 25, reversed and remanded August 3, 2011

Katherine D. KRAHN,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Canby School District #86,
*Respondents.*

Employment Appeals Board
10AB0389; A145110

260 P3d 778

S. Caitlin Dolan argued the cause and filed the brief for petitioner.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

No appearance for respondent Canby School District #86.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Claimant seeks judicial review of a decision by the Employment Appeals Board (EAB) that disqualified her from receiving unemployment insurance benefits because she voluntarily left her employment without good cause. ORS 657.176(2)(c). Claimant contends that the EAB's decision is not supported by substantial evidence.[1] We agree with claimant and therefore reverse.

The following facts are taken from the unchallenged findings in the EAB's decision and the uncontroverted evidence in the record. The Canby School District hired claimant to work full-time as an elementary school Special Education Resource teacher during the 2008-09 school year. On May 1, 2009, the director of human resources for the school district, Hank Harris, met with claimant and notified her that, due to budget cuts, she would be reduced to working part-time hours and would be reassigned to a special education teaching position at "Parrott Creek." Parrott Creek is a residential treatment facility for juvenile offenders who would otherwise be placed in a youth correctional facility. The structured living program includes "on-site alternative education."

During their May 1 meeting, Harris told claimant that Parrott Creek was a middle school for children who have been in trouble with the law but "haven't done horrible crimes." Claimant expressed concerns about her safety working in that setting. Harris attempted to allay those fears, assuring her that she "would be just fine" and that there were multiple ways in which she could get help if needed. Harris told her that the class size would be small—a group of five to six students—and that an instructional assistant would be with her in the classroom at all times. Claimant told Harris that she would take the position.

On June 9, 2009, claimant toured Parrott Creek for three to four hours with its associate principal. She met and spoke with the departing teacher whose position she would be taking and that teacher's instructional assistant. During

---

[1] Neither the school district nor the Employment Department filed a response brief in this court.

the tour, claimant learned that Harris had provided inaccurate information about the school, the position, the students, and the classroom environment. She discovered that she would be teaching high school rather than middle school students, and that she would be teaching in a correctional setting. She learned that all the students were male, and that approximately 75 percent of them were at Parrott Creek because they had committed rape, sexual assault, or acts of physical violence. The classroom was located in a basement with small windows near the ceiling, had only one phone, and had no panic button. Although claimant had been told that she would be teaching five or six students, the class she observed had 12 students, and the departing teacher told her that she did not believe the class size was going to decrease the following year. Moreover, the instructional assistant explained to claimant that, depending on her clerical duties, the assistant would only be in the classroom for one or two hours per day, which meant that claimant would be alone in the classroom for much of the day. The departing teacher also told claimant that her life had been threatened on three occasions and that students had made "numerous" sexual advances toward her.

Claimant met with Harris the same day, after the tour. Claimant, who was not trained or equipped to handle troubled youths, was concerned about the placement primarily because of safety concerns. She was also concerned because she "had never taught high school before" and "didn't have a certification to teach the—the core [high-school] subjects." Claimant discussed her concerns with Harris, including the 12-student class size and the basement classroom location. Harris did not indicate that anything would be or could be changed or addressed. Claimant specifically asked if she would get training or assistance, and Harris's only response was that "this job isn't for everyone." Harris gave claimant until July 15 to decide whether she would take the position at Parrott Creek. On July 14, claimant declined the position.

Claimant then sought unemployment insurance benefits, and her claim was initially allowed by the Employment Department. The school district requested a hearing, and, following that hearing, an administrative law judge

(ALJ) awarded benefits to claimant.[2] The school district appealed that decision to the EAB, arguing that claimant had voluntarily left her employment without "good cause," thereby disqualifying her from receiving unemployment insurance benefits. ORS 657.176(2)(c).

The EAB reversed the ALJ's decision. The EAB found that claimant "did not ask Harris or any other representative of the employer to modify her working conditions to lessen her safety concerns or whether her other assumptions about the school were accurate." The EAB further found that "employer customarily provided training or mentoring for teachers, like claimant who, although certified to teach at a particular level, were not experienced in doing so." Based on those findings, the EAB concluded that claimant had not "pursued her reasonable alternatives to quitting work":

> "In [the decision], the ALJ concluded that claimant's concerns for her physical safety combined with her lack of experience in teaching adjudicated youths constituted good cause for claimant to leave work. The ALJ failed to consider, however, whether claimant had demonstrated that she had no reasonable alternative but to leave work. For the reasons discussed below, we conclude that claimant failed to establish good cause in that she did not pursue the options that a reasonable and prudent person would have explored before deciding to quit work.
>
> "Claimant acted on her fears, impressions, and assumptions in deciding to quit work rather than trying to explore whether her fears were legitimate and whether the employer could or had the capacity to take steps that would alleviate her concerns. Claimant had the option to ask the employer for information about the dangers associated with the Parrott Creek position, what types of security and assistance would be available to her in that position, and whether any accommodations could be made that would make her feel more secure teaching the special education class at Parrott Creek. Because claimant failed to establish

---

[2] This was the second of two hearings that the ALJ conducted. After the first hearing, the ALJ determined that, because claimant remained on the school district's recall list, she had not been separated from her employment, a prerequisite to benefits. The district appealed that decision, and the EAB set it aside on the ground that claimant voluntarily left her employment. That determination is not in dispute; the only issue in this case is whether she left for "good cause."

that she pursued her reasonable alternatives to quitting work, she has therefore failed to establish that she left work for good cause. Claimant is disqualified from receiving unemployment insurance benefits."

In her petition for judicial review, claimant argues that certain factual findings in the EAB's decision are not supported by substantial evidence, and that the EAB's conclusion does not logically follow from its factual findings. *See* ORS 183.482(8)(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."); *Alcala v. Employment Dept.*, 235 Or App 32, 37-38, 230 P3d 59 (2010) (substantial evidence review requires us to ensure that the EAB's decision " 'articulates the reasoning that leads from the facts found to the conclusions drawn' ") (quoting *Salosha, Inc. v. Lane County*, 201 Or App 138, 143, 117 P3d 1047 (2005)). We agree that the EAB's reasoning in this case was flawed.

"For a voluntary quit, the focus is on whether the claimant left work with good cause." *McDowell v. Employment Dept.*, 348 Or 605, 612, 236 P3d 722 (2010). "Good cause" is a delegative term that the Employment Department has authority to refine by rulemaking. The general test for good cause under the department's rule, OAR 471-030-0038(4), is whether a "reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." In other words, good cause is "an objective standard that asks whether a 'reasonable and prudent person' would consider the situation so grave that he or she had no reasonable alternative to quitting." *McDowell*, 348 Or at 612.

Importantly, that "objective inquiry depends on what claimant *in fact knew and reasonably should have known* when [she] made [her] decision" to quit her job. *Id.* at 619 (emphasis added). There is no dispute that, after her tour at Parrott Creek, claimant learned that she would be teaching (1) high-school classes (2) of male students (3) who had been convicted of sexual and violent offenses (4) and who had made sexual advances toward, and threatened the life of, their current teacher; and, further, that she would be teaching (5) mostly by herself (6) in a basement with small

windows, one phone, and no panic button. When claimant confronted the human resources director, Harris, with her safety concerns, including the class sizes and the location of the classroom, Harris told her only that "this job isn't for everyone."

On those facts, a reasonable person in claimant's position would have had no reason to believe that the school district was willing or able to make further accommodations to the teaching position at Parrott Creek. That is, under the circumstances—where claimant presented specific safety concerns that were summarily dismissed by the school district's human resources director—she reasonably understood the conditions at Parrott Creek to be as she saw them on her tour, and reasonably believed that her only alternatives were to accept or decline the position as it existed.

The EAB's conclusion—that claimant "acted on her fears, impressions, and assumptions in deciding to quit work rather than trying to explore whether her fears were legitimate and whether the employer could or had the capacity to take steps that would alleviate her concerns"—imposed an unreasonable burden on claimant. Viewing the evidence as a whole, and contrary to the EAB's conclusion, there was no reason for claimant to have further pressed her human resources director about whether the district would take "steps that would alleviate her concerns"; Harris's response told her otherwise. And considering that most of what Harris initially told claimant about Parrott Creek was demonstrably false, she could reasonably assume that there was little to gain from eliciting his further assurances regarding safety accommodations. Furthermore, although the EAB found that "employer customarily provided training or mentoring for teachers" who were inexperienced at "a particular level," the EAB did not find (and there is no evidence in the record) that *claimant knew or had reason to know* that such training or mentoring was provided. As it was, claimant would not have been able to teach at Parrott Creek without risking her personal safety; a "reasonable and prudent person" under those circumstances would have considered the situation "so grave that he or she had no reasonable alternative to quitting." *McDowell*, 348 Or at 612.

In sum, the school district reassigned claimant, an elementary school teacher, to a position teaching high-school-age males in the basement of a residential treatment facility, where she would be alone with students with histories of violence and sexual offenses. She had no training or experience that would have prepared her for that environment, raised concerns about her safety with the school district, and was then simply given the choice to accept or reject the reassignment. She had good cause to decline the reassignment under the circumstances known to her, and the EAB erred in concluding otherwise.

Reversed and remanded.