Submitted May 29, affirmed October 31, 2012

COMPRESSED PATTERN, LLC,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT TAX SECTION,
*Respondent.*

Office of Administrative Hearings
T71163; A146647

293 P3d 1053

Lisa A. Kaner and Markowitz, Herbold, Glade & Mehlhaf, P.C., filed the briefs for petitioner.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent,

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Petitioner, an architectural design company, hired Jason Singer to provide drafting services on some of petitioner's projects. The Employment Department Tax Section sent a Notice of Tax Assessment to petitioner, claiming that petitioner had employed Singer for part of 2009 but had not paid employment taxes on his wages for that period. Petitioner requested a hearing on the assessment and argued to an administrative law judge (ALJ) that Singer was an independent contractor rather than petitioner's employee. The ALJ disagreed with petitioner, concluded that petitioner's payments to Singer were wages subject to employment taxation, and upheld the tax assessment. Petitioner now seeks judicial review of the ALJ's final order, arguing that the ALJ erred in interpreting and applying one of the criteria that, by statute, establishes that a person is an independent contractor: that the person is engaged in an "independently established business." ORS 670.600(2)(b), (3). For the reasons that follow, we affirm.

We state the facts consistently with the ALJ's unchallenged factual findings. *McDowell v. Employment Dept.*, 348 Or 605, 608, 236 P3d 722 (2010) (the agency's unchallenged findings are the facts for purposes of judicial review).

In January 2009, Singer was laid off by GBD Architects, where he had been an architectural intern since 2002. As an architectural intern, Singer's duties had included drafting architectural and construction drawings and schematics using computer aided design (CAD) software. After he was laid off, Singer began looking for employment opportunities.

Singer was personally acquainted with petitioner's owners, Arielle and Travis Weedman. Petitioner provides architectural design services, as well as branding services such as logo and website design. The company, however, does not provide drafting services. The Weedmans knew that Singer had been laid off by GBD Architects and that Singer had experience as a draftsman.

In the summer of 2009, Singer began providing drafting services on certain of petitioner's projects. Singer and petitioner orally agreed that Singer would perform those drafting services at a rate of $35.00 per hour. Petitioner paid Singer periodically, depending on when Singer sent petitioner a statement of the time that he had spent working on a project. Singer's invoices also included a brief description of the work he performed for petitioner. Petitioner did not pay any employment taxes on the amounts it paid to Singer, and instead of reporting its payments to Singer as wages, provided Singer with a Form 1099 indicating that he had received miscellaneous income from petitioner.

Under their arrangement, petitioner provided Singer with design specifications and general deadlines for completing drawings, but otherwise left it up to Singer to complete the work. Singer set his own hours, and petitioner did not provide him with office or work space, with any equipment or supplies to perform drafting work, or with an e-mail address or business cards. Nor did petitioner hold Singer out to its customers or the public as petitioner's employee.

In fact, Singer actually performed the drafting work for petitioner at the office of GBD Architects, his previous employer. GBD Architects allowed Singer to use, at no cost to him, the company's offices, computers, and CAD software. When traveling to petitioner's projects to take pictures and measurements, Singer used his own vehicle and was not reimbursed for mileage. Singer also used his own tape measure, pens, pencils, and paper to perform drafting work for petitioner, and he used a camera that he borrowed from his girlfriend.

Between January 2009 and April 2010, Singer also performed some drafting work for others besides petitioner. In January 2009, one of Singer's friends, an architect, approached Singer about working together on a project to convert a garage to a workshop. Singer agreed to prepare the drawings, and the client paid Singer and his friend a fee of $1,500, of which Singer received $1,200. In February 2010, Singer began providing drafting services to Manion, a furniture company, after one of the principals

of GBD Architects had referred Manion to Singer. On two other occasions (in September 2009 and April 2010), Singer submitted bids to client referrals from petitioner, but Singer was not awarded those jobs. Singer did not carry liability insurance or performance bonds for any of the drafting services he provided to petitioner or others.

Although Singer provided only drafting services between January 2009 and April 2010, he was also working toward completing the examinations necessary to obtain his license as an architect. Singer had taken seven licensing exams, and paid $220 for each exam.

On March 3, 2010, the Employment Department Tax Section mailed a Notice of Tax Assessment to petitioner. That notice stated that petitioner had paid wages to Singer in the third and fourth quarters of 2009 but had not paid employment taxes on those wages. Petitioner appealed that determination, and the Employment Department referred the matter to the Office of Administrative Hearings, which appointed an ALJ to hear the appeal.

The issue before the ALJ was whether Singer had been an employee whose wages were subject to employment taxes or, rather, whether he had been an independent contractor whose payment was exempt from such taxes. *See* ORS 657.040(1) ("Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the Director of the Employment Department that the individual is an independent contractor, as that term is defined in ORS 670.600."). The question reduced to whether Singer met the statutory definition of an independent contractor set out in ORS 670.600—and, more specifically, whether Singer was "customarily engaged in an independently established business."[1] ORS 670.600(2)(b). For purposes of that statute, a person is

---

[1] The Employment Department did not dispute that Singer met the first prong of the independent contractor test—*i.e.*, that Singer was "free from direction and control over the means and manner of providing the services, subject only to the right of the person for whom the services are provided to specify the desired results[.]" ORS 670.600(2)(a).

"considered to be customarily engaged in an independently established business *if any three of the following [five] requirements are met*:

"(a) The person maintains a business location:

"* * * * *

"(b) The person bears the risk of loss related to the business or the provision of services * * *.

"* * * * *

"(c) The person provides contracted services for two or more different persons within a 12-month period, or the person routinely engages in business advertising, solicitation or other marketing efforts reasonably calculated to obtain new contracts to provide similar services.

"(d) The person makes a significant investment in the business * * *.

"* * * * *

"(e) The person has the authority to hire other persons to provide or to assist in providing the services and has the authority to fire those persons."

ORS 670.600(3) (emphasis added).

Petitioner had the burden of proving that Singer met at least three of those requirements. *See* ORS 657.683(4) (the "assessment of the director or authorized representative shall be prima facie correct and the burden shall be upon the protesting employing unit to prove that it is incorrect"). The ALJ ruled that petitioner had not carried its burden in that regard. At most, the ALJ concluded, petitioner proved that Singer met two of the requirements for an "independently established business": that Singer had provided the same services to others, ORS 670.600(3)(c), and he had the authority to hire and fire other qualified drafters, ORS 670.600(3)(e). Because petitioner failed to prove that Singer met a third requirement (either maintained a business location, ORS 670.600(3)(a); bore the risk of loss related to the business, ORS 670.600(3)(b); or made a significant investment in the business, ORS 670.600(3)(d)), the ALJ concluded that Singer was not an independent contractor and that the Notice of Tax Assessment was correct.

In its petition for review, petitioner contends that the ALJ misinterpreted ORS 670.600(3) and that, as a matter of law, the evidence in the record compelled a conclusion that at least one more of the five requirements was satisfied. We review the ALJ's interpretation of ORS 670.600(3) for errors of law, and the ALJ's findings for substantial evidence. *See* ORS 657.684 ("Judicial review of decisions under ORS 657.683 shall be as provided for review of orders in contested cases in ORS chapter 183 * * *."); ORS 183.482(8)(a) (court shall set aside, modify, or remand an order if "the agency has erroneously interpreted a provision of law" and "a correct interpretation compels a particular action"); ORS 183.482(8)(c) ("The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."). Applying those standards of review, we reject petitioner's assignments of error and affirm the ALJ's decision.[2]

Petitioner first challenges the ALJ's determination as to whether Singer "maintain[ed] a business location" within the meaning of ORS 670.600(3). A person satisfies that statutory requirement if:

"(a) The person maintains a business location:

"(A) That is separate from the business or work location of the person for whom the services are provided; or

"(B) That is in a portion of the person's residence and that portion is used primarily for the business."

ORS 670.600(3). The ALJ found that Singer performed work for petitioner at two locations: "(1) the site of [petitioner's] project, where he took measurements and pictures, and (2) his former employer, GBD's offices." The ALJ reasoned that those work sites, although separate from petitioner's business, were not business locations that *Singer maintained*; as for the use of GBD Architect's office space,

---

[2] The Employment Department cross-assigns error to the ALJ's ruling that Singer had the authority to hire and fire. Because we reject petitioner's arguments regarding the other statutory factors, we need not reach the cross-assignment of error.

the ALJ found that Singer did not pay rent for the space, was not charged for the equipment, and did not otherwise maintain that site as a business location. The ALJ explained that "[p]roving that Singer *maintained* a separate business location requires showing more than just that he performed the subject services somewhere other than [petitioner's] business location." (Emphasis by ALJ.) Rather, the ALJ ruled, petitioner was required to prove that Singer actually "maintained" a business location, and there was no evidence that Singer did anything of the sort.

Petitioner now argues on judicial review that the mere fact that "Singer performed his work at a location separate from [petitioner] is determinative," and it is immaterial that he did not pay for his work space or have responsibility for maintaining it. According to petitioner, the "record established that [Singer], in accordance with the statute, 'maintains a business location': (A) [t]hat is separate from the business or work location of the person for whom the services are provided' when he indisputably utilized the work space at GBD's office to perform work for [petitioner]." That is, under petitioner's construction of the statute, all that must be proved is that the person performing the work does it somewhere other than the location of the business or person for whom the services are provided.

Petitioner's argument conflates two distinct components of ORS 670.600(3)(a)(A). Subparagraph (A), when read in context, requires the person to "*maintain* a business location" "[t]*hat is separate* from the business or work location of the person for whom the services are provided." *Id.* (emphasis added). In other words, a business location must be *both* "maintained" by the person *and* "separate from the business or work location of the person for whom services are provided."

To conclude otherwise—to say, as petitioner argues, that a business location is maintained simply *because it is a separate work location*—would render the word "maintain" superfluous and, more importantly, render subparagraph (B) meaningless. That latter subparagraph provides that a person can alternatively satisfy the "maintain a business location" requirement by maintaining a business location

"[t]hat is in a portion of the person's residence and that portion is used primarily for the business." ORS 670.600(3)(a)(B). If all that were necessary for a person to "maintain a business location" was performance of the work somewhere other than the client's business or work site, then it would not matter if that location were in a residence or what portion of a residence were used to perform the work, effectively writing subparagraph (B) out of the statute.

Thus, the ALJ correctly interpreted ORS 670.600(3)(a) to require proof that Singer actually "maintained" a separate business location, thereby giving effect to the different parts of the statutory text. The ALJ found that, although Singer worked separately from petitioner's place of business, Singer did not do anything to *maintain* a business location; he used, for free, the space and equipment of GBD Architects and did not otherwise do anything to maintain his own business location at their site. There is substantial evidence in the record to support the ALJ's order in that respect, and we therefore reject petitioner's first assignment of error.

In its next two assignments, petitioner argues that the ALJ first misstated the legal standard under ORS 670.600(3)(b), which concerns whether Singer bore a risk of loss related to the business, and then ignored evidence that Singer was required to correct any deficiencies in his work. We are not persuaded that the ALJ erred in either way.

ORS 670.600(3)(b) requires that

"[t]he person bears the risk of loss related to the business or the provision of services as shown by factors such as:

"(A)  The person enters into fixed-price contracts;

"(B)  The person is required to correct defective work;

"(C)  The person warrants the services provided; or

"(D)  The person negotiates indemnification agreements or purchases liability insurance, performance bonds or errors and omissions insurance."

With regard to that requirement, the ALJ wrote:

"There is no written agreement between [petitioner] and Singer, and Singer testified he had no formal indemnification agreement with [petitioner]. Singer also testified that he did not carry any liability insurance or performance bond covering the drafting work he did for [petitioner]. Singer also charged [petitioner] for his services by the hour. There is no evidence of a fixed-price agreement that might otherwise suggest he bore some risk of loss if he under bid a job, for example. [Petitioner] paid Singer for the actual time he spent working on [petitioner's] projects. *Although Singer testified he was responsible for correcting any defects in his drafting work, and that he would not have charged [petitioner] for making any such corrections, that alone is not enough to show that Singer bore any significant risk of loss.*"

(Emphasis added.)

Petitioner initially seizes on the last sentence of the ALJ's analysis, arguing that the ALJ misunderstood the statutory requirement and imported the word "significant" into the text of ORS 670.600(3)(b). We reject that argument (petitioner's second assignment of error) without extended discussion. Read in context, it is evident that the ALJ applied the correct legal test and found that petitioner had not shown any type of risk of loss that was legally significant—*i.e.*, a risk of loss that would satisfy the statutory requirement.

Petitioner next argues that the ALJ effectively ignored the undisputed evidence in the record that Singer was required to correct any defective work—evidence that, according to petitioner, satisfied ORS 670.600(3)(b)(B) as a matter of law. The ALJ, however, did not simply ignore evidence that Singer bore a risk of loss. Rather, the ALJ discounted the probative value of Singer's purported *willingness* to correct his own mistakes, given the nature of the parties' arrangement—*i.e.*, no written contract; no evidence that Singer would have been *required* to correct defective work; payment based on hourly fee; and no liability insurance or performance bond carried by Singer.[3] The ALJ

---

[3] On cross-examination, Singer was asked, "You mentioned you were required to correct any defective work; is that correct?" He responded, "No, I was—I don't know if I was ever required to correct any work, but if—I mean, if there was a mistake, if there was something that needed to be corrected, yes, I would for sure—I would obviously correct that." One plausible reading of that testimony is

determined, under the totality of the circumstances, that Singer did not actually bear any risk of loss with regard to his drafting services. The order is supported by substantial evidence on that point, and we therefore reject petitioner's third assignment of error without further discussion.

In its final assignment of error, petitioner contends that the ALJ erred "by finding that [Singer] had not made a significant investment in his business." Under ORS 670.600(3)(d), a person "makes a significant investment in the business, through means such as:

"(A) Purchasing tools or equipment necessary to provide the services;

"(B) Paying for the premises or facilities where the services are provided; or

"(C) *Paying for licenses, certificates or specialized training required to provide the services.*"

(Emphasis added.) Petitioner argues that evidence of Singer's efforts to obtain an architectural license—including paying more than $1,500 to take seven licensing exams—was sufficient to prove that he "pay[ed] for licenses * * * required to provide the services" and, consequently, that Singer made a "significant investment in the business."

The ALJ found as fact, however, that Singer was not obtaining an architectural license to engage in "the business" that Singer had engaged in with petitioner and others between January 2009 and April 2010. During that time, Singer's services for petitioner and others involved only drafting, and an architectural license was not required for those services. Singer apparently had been pursuing an architectural license since 2002, including while he was an employee for GBD Architects. Singer also told an Employment Department investigator in February 2010 that he did not have a business. Thus, there was evidence in the record to support the ALJ's factual finding that, although Singer had invested in an architectural license, he had not made that investment for the purpose of investing in any existing business.

that Singer was willing to take responsibility for correcting any defective work but was not required to do so under their agreement.

The ALJ further found that Singer had not made *any* investment in the assets necessary to perform drafting services. He did not purchase or pay for the CAD software or the printer necessary to create hard copies of drawings. Based on those facts, the ALJ found, and substantial evidence supported a finding, that Singer had not made any significant investment in the only business in which he was engaging—providing drafting services. Accordingly, we reject petitioner's fourth assignment of error.

Affirmed.