Argued and submitted December 22, 2015, reversed and remanded
March 8, 2017

PORTLAND COLUMBIA SYMPHONY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Employment Department
T71202; A156550

390 P3d 1093

Robyn Ridler Aoyagi argued the cause for petitioner. With her on the briefs was Tonkon Torp LLP.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**GARRETT, J.**

Petitioner, a symphony orchestra, seeks judicial review of an order assessing unemployment tax, which the Employment Department entered on remand following our decision in *Portland Columbia Symphony v. Employment Dept.*, 258 Or App 411, 310 P3d 1139 (2013) (*PCS I*). In that decision, we held that the department had erroneously applied provisions of the independent contractor statute, ORS 670.600, in determining that all of petitioner's paid musicians in 2009 were employees, triggering petitioner's obligation to pay unemployment tax. On remand, the department deemed 13 of the musicians to be independent contractors but held to its previous determination that the remaining musicians were employees.

On review, petitioner makes three assignments of error. The first and second assignments challenge the department's application of two provisions of the independent contractor statute, ORS 670.600(3)(a) and (d). The third assignment raises a procedural challenge to the department's evident decision, on remand, to require an individualized showing as to each musician rather than to treat certain members of the orchestra as representative of the group. For the reasons explained below, we conclude that the record establishes as a matter of law that the orchestra's musicians have made a "significant investment," within the meaning of ORS 670.600(3)(d), in the business of being musicians. Under the procedural circumstances of this case, and in light of our decision in *PCS I*, that is sufficient to prove that all the orchestra's paid musicians during the relevant time were independent contractors not subject to unemployment tax. The department's order is reversed.

Most of the facts are set forth in *PCS I* and are repeated here (sometimes verbatim) only as necessary to provide context for the specific issues raised in this second appeal.

Petitioner is a nonprofit organization that presents, in a typical year, five different musical programs, with two performances of each program. The musicians who perform with petitioner include both volunteer members and paid members; the paid members fill what are called "core"

positions in the orchestra. For years, petitioner's core musicians worked without written contracts, but, in 2005, petitioner began entering into signed agreements with those performers. The contract states that petitioner seeks to "engage as independent contractors a full complement of musicians necessary to present the concert series." The musicians must agree to attend all rehearsals and concerts, prepare for rehearsals and concerts to the satisfaction of the conductor and section leaders, and abide by the terms of petitioner's written personnel policy. Petitioner sets the content and scheduling of rehearsals and concerts. Petitioner's performance season runs from October through May, and includes approximately 10 concerts and 20 or 25 rehearsals. The musicians themselves provide almost all of the necessary equipment for their performances. Although petitioner provides sheet music for the programs, the musicians provide their own instruments and music stands. In general, the musicians own their instruments, many of which were purchased for thousands of dollars and cost hundreds of dollars each year to maintain. Musicians also must decide whether it is necessary to purchase performance aids, such as recordings of the musical piece, to prepare for rehearsals and concerts.

Following an investigation in 2009, the department determined that "all of petitioner's core musicians were employees and that petitioner's payments to those musicians constituted wages subject to unemployment taxation. Because petitioner had not paid unemployment taxes on payments to its musicians, the department issued a notice of tax assessment for unemployment contributions for 2009." *PCS I*, 258 Or App at 419 (emphasis omitted). Petitioner contested the tax assessment before an administrative law judge (ALJ), who considered whether petitioner had carried its burden of proving that its musicians met the criteria for independent contractors in ORS 670.600(2). *See* ORS 657.040(1) ("Services performed by an individual for remuneration are deemed to be employment * * * unless and until it is shown to the satisfaction of the Director of the Employment Department that the individual is an independent contractor, as that term is defined in ORS 670.600."). ORS 670.600(2) provides that, for purposes of ORS chapter

657 (unemployment insurance), an "independent contractor" is a person who provides services for remuneration and who, in the provision of the services,

> "(a)   Is free from direction and control over the means and manner of providing the services, subject only to the right of the person for whom the services are provided to specify the desired results;
>
> "(b)   * * * [I]s customarily engaged in an independently established business;
>
> "(c)   Is licensed under ORS chapter 671 or 701 if the person provides services for which a license is required under ORS chapter 671 or 701; and
>
> "(d)   Is responsible for obtaining other licenses or certificates necessary to provide the services."

Of procedural importance on appeal, the parties and the ALJ treated the four musicians who testified at the hearing as representative of petitioner's other "core" musicians. At a prehearing conference, the department stated that it would call only two musicians to testify because "most of these musicians are similarly situated." The ALJ also made a statement to the effect that it would be unnecessarily duplicative to hear testimony from more than a few musicians, and encouraged petitioner to limit its presentation accordingly. At the hearing, the department's auditor testified that, because "all these people performed the same kind of service, doing the same types of things, * * * we didn't feel it was necessary to interview all of these individuals." Thus, four musicians testified at the hearing. As discussed further below, the ALJ ultimately affirmed the notice of tax assessment, reasoning that petitioner failed to carry its burden of proving that the musicians met each of the relevant, conjunctive criteria in ORS 670.600(2).

In *PCS I*, reviewing for legal error and substantial reason, we understood the dispute to hinge on the application of ORS 670.600(2)(a) and (b). 258 Or App at 420. Subsections (2)(c) and (2)(d) were not at issue.[1]

---

[1] Subsection (2)(c)—which requires licensure for services that require a license under ORS chapters 671 or 701—was never implicated by the facts of this case. As for subsection (2)(d) (requiring the person providing services to be "responsible for obtaining other licenses or certificates necessary to provide the

As to subsection (2)(a), the "direction and control" test, we concluded that the ALJ's determination that petitioner failed to meet that criterion lacked substantial evidence. The record, we explained, established that "the musicians—all of whom were similarly situated—were 'free from direction and control over the means and manner of providing the services, subject only to the right of [petitioner] to specify the desired results.'" *Id.* at 424 (quoting ORS 670.600(2)(a) (brackets in *PCS I*)).

We then turned to subsection (2)(b), which requires that petitioner's musicians be engaged in an "independently established business." ORS 670.600(2)(b). For purposes of that provision, a person is "considered to be customarily engaged in an independently established business if any three of the following [five] requirements are met":

"(a)   The person maintains a business location:

"(A)   That is separate from the business or work location of the person for whom the services are provided; or

"(B)   That is in a portion of the person's residence and that portion is used primarily for the business.

"(b)   The person bears the risk of loss related to the business or the provision of services ***[.]

"* * * * *

"(c)   The person provides contracted services for two or more different persons within a 12-month period, or the person routinely engages in business advertising, solicitation or other marketing efforts reasonably calculated to obtain new contracts to provide similar services.

"(d)   The person makes a significant investment in the business, through means such as:

"(A)   Purchasing tools or equipment necessary to provide the services;

"(B)   Paying for premises or facilities where the services are provided; or

---

services"), although the ALJ ruled that petitioner failed to meet that criterion, the department declined to defend the ALJ's ruling on that rationale, and we observed in a footnote that the record did not support the ALJ's determination. *PCS I*, 258 Or App at 420 n 5.

"(C)   Paying for licenses, certificates or specialized training required to provide the services.

"(e)   The person has the authority to hire other persons to provide or to assist in providing the services and has the authority to fire those persons."

ORS 670.600(3). Petitioner had the burden of proving that its musicians met at least three of those requirements. *See* ORS 657.683(4) (the "assessment of the director or authorized representative shall be prima facie correct and the burden shall be upon the protesting employing unit to prove that it is incorrect"). The ALJ ruled that petitioner had failed to carry its burden and that "'[n]one of the musicians meets at least three of the five [criteria] for an independently established business.'" *PCS I*, 258 Or App at 425 (brackets in original). The ALJ reasoned that, although some of the musicians met the criterion in subsection (3)(c) by contracting with others or soliciting other work, none of the musicians met any of the other four criteria in subsections (3)(a), (b), (d), or (e). *Id.*

We disagreed, concluding that the record established that the representative musicians fulfilled the criteria in both subsection (3)(b) (risk of loss) and subsection (3)(e) (authority to hire and fire). *Id.* at 426-28. Because of that, and in light of the ALJ's determination that at least some of the musicians also satisfied the criterion in subsection (3)(c) (contracted services), it followed that "at least some of the representative musicians satisfied the test for an 'independently established business' by meeting three of the five requirements in ORS 670.600(3)." *Id.* at 428. That conclusion, together with our analysis of the "direction and control" issue, meant that "at least some of the representative musicians should have been treated as independent contractors rather than employees for purposes of unemployment taxes." *Id.* at 428-29. Accordingly, we reversed and remanded without reaching the question of whether petitioner's musicians satisfied any of the remaining criteria in ORS 670.600(3).

On remand, no new proceedings occurred; the ALJ issued a new order based on the existing record. The ALJ concluded that the "contracted services" criterion in ORS 670.600(3)(c) was satisfied by 13 of petitioner's musicians,

but not by the others. The ALJ further determined that none of the musicians satisfied either ORS 670.600(3)(a) (business location) or ORS 670.600(3)(d) (significant investment). As such, the ALJ determined that 13 of petitioner's musicians fulfilled at least three of the five criteria in ORS 670.600(3), and were therefore independent contractors, but that the others did not.

On review, petitioner challenges the ALJ's order on three grounds. First, petitioner argues that the ALJ incorrectly applied the "significant investment" criterion for an independently established business, ORS 670.600(3)(d), and that the record establishes that petitioner's musicians satisfy that criterion. Second, petitioner argues that the ALJ incorrectly applied the "business location" criterion, ORS 670.600(3)(a), as to one of the four musicians who testified at the hearing. Third, petitioner argues that the ALJ erred to the extent that it changed course on remand by requiring an individualized showing as to whether each of petitioner's core musicians was an independent contractor, rather than continuing to treat the four musicians who testified at the hearing as representative of the group.

Here, the "significant investment" criterion is dispositive. It is undisputed that petitioner's musicians supply the specialized equipment necessary to perform their work, most notably the musical instruments themselves, which typically cost thousands of dollars to purchase and hundreds more annually to maintain. *PCS I*, 258 Or App at 416. Indeed, the department concedes that the *amount* of money spent by the musicians on their instruments and other equipment is sufficient to qualify as a "significant investment." And the department does not appear to deny that petitioner's core musicians are in the "business" of providing paid musical services. In short, the record clearly establishes that the musicians have made significant investments in the equipment that is necessary to engage in the business of musical performance.

The ALJ found below, however, and the department argues on judicial review, that petitioner did not prove that its musicians made their investments as *business* investments. We understand the department's theory on review

to be that, although the musicians are in the music performance business and have spent significant sums on the tools necessary for that business, the missing link is proof that those sums were spent *in the business* rather than, say, for the "love of music." The department also asserts that the musicians may have purchased their equipment before they became professional musicians, and that an expense incurred before the business was established cannot constitute a "significant investment in the business" under ORS 670.600(3)(d).

We reject the department's view. The case on which the department relies, *Compressed Pattern, LLC v. Employment Dept.*, 253 Or App 254, 293 P3d 1053 (2012) (*Compressed Pattern*), is inapposite. In that case, Compressed Pattern, an architectural design company, hired Singer to provide architectural drafting services for some of its projects using computer-aided design (CAD) software. *Id.* at 255-56. Singer had recently been laid off by another architectural firm but was allowed to continue using that firm's offices, computers, and CAD software at no cost while performing services for Compressed Pattern. *Id.* As with his previous job, during the time that Singer provided drafting services for Compressed Pattern, he also continued to pursue his architectural license.

The Employment Department issued a tax assessment, determining that Compressed Pattern had paid wages to Singer without paying the required employment taxes on those wages. *Id.* at 257. Compressed Pattern appealed that determination, arguing that Singer was an independent contractor whose payment was exempt from such taxes. An ALJ ruled that Compressed Pattern had failed to show that Singer met three out of the five statutory requirements for an "independently established business" under ORS 670.600(3). *Id.* at 258.

On judicial review, among other things, we considered whether the ALJ erred in concluding that Singer had not made "a significant investment" in his business within the meaning of ORS 670.600(3)(d). *Id.* at 263. Compressed Pattern argued that Singer's efforts to obtain an architectural license—which included paying more than $1,500 for

licensing exams—were sufficient to prove that he had made a significant investment in the business by "[p]aying for licenses, certificates or specialized training required to provide the services." *Id.* (quoting ORS 670.600(3)(d)(C)). We rejected that argument, concluding that Singer's pursuit of an architect license was not an investment in the business in which he was engaged *at the time*—providing drafting services to Compressed Pattern. *Id.* at 263-64.

According to the department, *Compressed Pattern* stands for the proposition that an investment made prior to the commencement of a business cannot be a "significant investment in the business" for purposes of ORS 670.600(3)(d). Thus, the department appears to reason that, if petitioner's musicians purchased their instruments and other equipment at a time when they simply "loved music," and before they entered into the business of musical performance, then those purchases cannot count as significant investments.

The department misreads *Compressed Pattern*. Our conclusion that Compressed Pattern failed to prove that Singer had made a "significant investment in the business" did not flow from the fact that Singer had pursued his architectural licensure prior to beginning his drafting work for Compressed Pattern. Instead, our determination was based on the ALJ's factual findings, which were supported by substantial evidence, that (1) the drafting services that Singer provided did not require an architectural license and (2) Singer had failed to make "*any* investment in the assets necessary to perform drafting services." *Id.* at 264 (observing that Singer "did not purchase or pay for the CAD software or the printer necessary to create hard copies of drawings") (emphasis in original). Put differently, the problem in *Compressed Pattern* was that, although Singer made investments in becoming an architect, those investments bore no connection to the "business" in which he was engaged for Compressed Pattern.[2]

---

[2] The instant case is further distinguishable from *Compressed Pattern* in two meaningful respects. First, the architectural license that Singer pursued was not required to provide drafting services, whereas the musicians' instruments are necessary for the provision of services for petitioner. Second, unlike Singer, who "had not made *any* investment in the assets necessary to perform drafting services," 253 Or App at 264 (emphasis in original), it is undisputed that petitioner's

In short, *Compressed Pattern* does not hold that investments made before the commencement of a business do not qualify as investments in the business. The department advances no other reason for such a construction of the statute, and we can think of none. As a logical and practical matter, a person is likely to incur expenses in pursuit of establishing a business before actually establishing it. Indeed, nothing in *Compressed Pattern* suggested that Singer's expenses toward architectural licensure would not have qualified as investments in the business *of being an architect.* Moreover, a person may wish to dedicate previously acquired assets toward a business purpose; the mere fact that such dedication occurs after those assets have been acquired does not diminish the value of the contribution. For those reasons, we are not persuaded that ORS 670.600(3)(d) calls upon the department to inquire into the subjective motivations of the core musicians at the time that they acquired their instruments and other specialized equipment. It is undisputed that the core musicians, at the relevant time, were in the business of musical performance; that the musicians' instruments were used for that business; and that the musicians made investments of sufficient magnitude to qualify as "significant." Those facts resolve this appeal in petitioner's favor.

To the extent that the department argues that petitioner failed to carry its burden of proving that *all* core musicians made "significant investments" in the business (as opposed to only the four musicians who testified at the hearing), we disagree. The department never asserted below that such an individualized showing was required, and it affirmatively stated that the testimony of only two musicians was necessary because "most of these musicians are similarly situated." The ALJ appeared to agree that testimony from numerous musicians would be unnecessarily duplicative and encouraged petitioner to limit its presentation accordingly. Furthermore, as explained above, the department's argument regarding the need for an individualized showing presumes that the subjective motivation behind each musician's purchase of his or her instrument is

---

musicians made significant investments both in their instruments and other equipment necessary for the business of performing music.

relevant to the "significant investment" inquiry under ORS 670.600(3)(d), and we have rejected that interpretation.

In sum, the record compels the conclusion that petitioner's core musicians made "significant investment[s]" in their businesses under ORS 670.600(3)(d).[3] Because petitioner's core musicians satisfy the relevant criteria necessary to be considered independent contractors under ORS 670.600(2), their services are exempt from employment under ORS 657.040.

Reversed and remanded.

---

[3] In light of our conclusion that petitioner's core musicians satisfy three of the five requirements in ORS 670.600(3), petitioner has satisfied its burden of proving that the musicians are "customarily engaged in an independently established business" for purposes of ORS 670.600(2)(b). Accordingly, we need not address petitioner's second assignment of error.