Argued and submitted January 23, 2018, affirmed December 26, 2019

Dan Lee BERREY,
*Petitioner,*

*v.*

REAL ESTATE AGENCY,
*Respondent.*

Real Estate Agency
2012246, 2012264, 2012265,
2012266, 2012352, 2012396, 201332;
A160102

457 P3d 306

Petitioner seeks judicial review of a final order of the Real Estate Agency. In that order, the commissioner concluded that petitioner had engaged in professional real estate activity during a period when his license was lapsed and subsequently falsely represented otherwise on a license-renewal application. The commissioner also determined that, at other times, petitioner violated various statutory and regulatory provisions that govern professional real estate activity. The commissioner revoked petitioner's principal broker license and imposed a $1,500 civil penalty. On judicial review, petitioner asserts that, because of certain ownership interests he has in the properties he manages, he was not required to be licensed to engage in professional real estate activity involving those properties. Accordingly, petitioner argues, the lapse of his license was immaterial. Petitioner also challenges the other violations found by the commissioner and contends that the revocation of his license was too harsh a penalty, even if he committed some violations of the states and regulations governing real estate activity. *Held*: Petitioner's indirect interests in the properties he managed did not fall under the exception to the requirement of licensure for managing members of LLCs who are managing the property of that LLC. Further, the record supported the commissioner's determination that petitioner violated the statutes and rules that govern professional real estate activity repeatedly and in the absence of inadvertence or good-faith mistake. Accordingly, the commissioner did not err in revoking petitioner's license or imposing a civil penalty.

Affirmed.

Jill F. Foster argued the cause for petitioner. Also on the briefs was Churchill Leonard Lawyers.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Affirmed.

**HADLOCK, J. pro tempore**

Petitioner has invested in and developed real property for many years. To further that work, petitioner obtained various types of licenses issued by the Oregon Real Estate Agency (REA), starting with a sales license in 1977 and culminating with a principal real estate broker license. In 2015, the REA commissioner issued a final order revoking petitioner's principal broker license and imposing a $1,500 civil penalty. In that order, which adopted a proposed order issued by an administrative law judge (ALJ), the commissioner determined that petitioner had engaged in professional real estate activity during a period in which his license had lapsed, that petitioner had falsely represented otherwise on a license-renewal application, and that, at other times, petitioner had violated various statutory and regulatory provisions that govern professional real estate and property-management activities. On judicial review, petitioner asserts that, because of certain ownership interests he has in the properties he manages, he was not required to be licensed to engage in professional real estate activity involving those properties. Accordingly, he contends, the lapse of his license was immaterial. Petitioner also challenges the other violations found by the commissioner and, ultimately, he contends that revocation of his license is too harsh a penalty even if he committed some violations of the statutes and regulations governing real estate activity. For the reasons set out below, we conclude that petitioner has not established that the commissioner erred in any of the ways that petitioner contends. Accordingly, we affirm.

With a few exceptions, noted below, petitioner has not challenged the factual findings on which the commissioner's order is premised. Accordingly, we "describe the facts consistently with those found by the board and the record that supports the board's findings." *McDowell v. Employment Dept.*, 348 Or 605, 608, 236 P3d 722 (2010). *See also Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995) (the agency's unchallenged factual findings are the facts for purposes of judicial review).[1]

---

[1] We observe that some of the historical "facts" described in petitioner's brief on judicial review are not based on the commissioner's factual findings. Rather,

Here, we set out the facts that relate to the "big picture" question in this case: whether petitioner was required to be licensed to engage in the property-management activities at issue. We describe some additional facts later in the opinion, in conjunction with analyzing petitioner's challenges to other aspects of the commissioner's order. To give context to the discussion that follows, we also outline some of the pertinent statutory provisions, although we discuss the law in more detail later.

## CPM AND THE FIVE PROPERTIES; PETITIONER'S LICENSE

Under ORS 696.020(2), a person may not engage in or carry on "professional real estate activity" in Oregon "unless the individual holds an active license."[2] The term "professional real estate activity" is defined to include certain actions, including the management of rental real estate, "when engaged in for another and for compensation" or the intention or expectation of receiving compensation. ORS 696.010(14)(h). Moreover, licensees are bound by certain provisions of ORS chapter 696 while "[e]ngaging in professional real estate activity." ORS 696.020(3)(a). Thus, unlicensed individuals generally may not engage in the management of rental real estate, when that management is "engaged in for another" and for compensation, ORS 696.010(14)(h), and licensed individuals must follow certain requirements of ORS chapter 696 when doing so. However, some individuals are exempt from certain ORS chapter 696 provisions, including the ORS 696.020(2) requirement that individuals engaging in professional real estate activity be licensed. *See*

petitioner's description of the facts relies on evidence in the record that supports one perspective on the historical events and their significance, whether or not that perspective is consistent with the commissioner's factual findings. Such a description of the facts implicitly urges us to reweigh the evidence, which is not our role on judicial review. *Tri-County Center Trust v. Dept. of State Lands*, 298 Or App 835, 836, 445 P3d 953 (2019).

[2] Some provisions of ORS chapter 696 have been amended frequently and, in 2013, certain provisions were renumbered, although the substance was not materially altered. For ease of reference, all statutory citations in this opinion are to the 2015 versions of the statutes, which (as cited here) include the substantive provisions that were in effect when petitioner engaged in most of the conduct at issue here and the commissioner issued his final order. Some of the statutes have since been amended, but those amendments do not apply to this case.

*generally* ORS 696.030 (creating exemptions). As pertinent here, ORS 696.030(27) creates such an exemption for an individual "who is the sole member or a managing member of [an LLC] and who is engaging in \*\*\* management of the real estate of the [LLC]." A fundamental question in this case is how those ORS chapter 696 statutes apply to petitioner's management of five rental properties in which he had ownership interests.

In 2003, petitioner formed C.P. Management Co., a corporation that provided property-management services under the name "Certified Property Management" (CPM). Petitioner registered CPM with the REA as a property-management company in which he was the principal broker; he was also the company's designated property manager.[3] As relevant here, CPM provided property-management services for each of five properties in which petitioner held some sort of ownership interest: 340 Vista Ave. (Vista Ave), McKenna Estates (McKenna), Lakepointe Apartments (Lakepointe), Westec South Business Park (Westec), and the Candalaria properties, including Candalaria South/Candalaria Crossing (Candalaria). As part of those services, CPM collected security deposits and rents from tenants; it also paid all taxes and expenses on the properties, subject to approval of the property owners.

Vista Ave is a commercial property located in Salem that, at pertinent times, was leased by a state agency. It was owned by 340 Vista, LLC. 340 Vista, LLC, in turn, had several members, one of which was the Berrey Family, LLC, which had a 14.48 percent voting interest in 340 Vista, LLC. Petitioner claimed an ownership interest in Vista Ave through his membership interest in Berrey Family, LLC (of which he was the managing member). In 2009, CPM and 340 Vista, LLC, entered into a property-management

---

[3] The REA is required to promulgate rules establishing "a system for the registration of business names." ORS 696.026(1). The business name itself "has no license standing." ORS 696.026(5). Rather, "[o]nly a principal real estate broker or licensed real estate property manager may control and supervise the professional real estate activity conducted under the registered business name." ORS 696.026(4). Moreover, "[i]f a principal real estate broker or licensed real estate property manager has a registered business name[, a]ll professional real estate activity conducted by the principal broker or property manager must be conducted under the registered business name." ORS 696.026(7)(a).

agreement under which CPM would receive monthly property-management fees, as a percentage of gross revenues and commissions on new leases. That agreement terminated in January 2013.

McKenna is a residential apartment complex in Eugene. Through a tenancy-in-common agreement with other owners, 340 Vista, LLC, held a 74.841 percent interest in that property. Petitioner claimed an ownership interest in McKenna through his interest in Berrey Family, LLC, and that entity's interest in 340 Vista, LLC. CPM and the McKenna owners entered into a property-management agreement in 2007; CPM was compensated through a percentage of revenues. Management of McKenna was transferred to another company in April 2012.

In 2006, the Lakepointe residential apartment complex was acquired by several owners, who held the property through a tenancy-in-common agreement. Among those owners was "Dan L. and Fran H. Berrey, Trustees," who had a 2.5 percent interest in the property. In 2011, the Lakepointe owners and CPM entered into a property-management agreement that specified monthly management fees equal to a percentage of revenues.

Westec, a commercial development in Eugene, was held by several owners through a 2003 tenancy-in-common agreement. "Dan & Fran Berrey, Trustees," had a 22.281 percent ownership interest in Westec. CPM started managing Westec in 2003 according to a property-management agreement specifying that CPM would be compensated through a combination of a percentage of revenues and commissions for new or renewed leases.

Candalaria South, LLC, had several members, including "Dan L. and Fran H. Berrey, Trustees," who had a 54.55 percent interest. Petitioner was the LLC's managing member. The LLC owned the Candalaria commercial properties in Salem. In 2009, Candalaria South, LLC, and CPM entered into a property-management agreement that provided for fees based on a percentage of revenues and commissions.

Petitioner first obtained a principal broker license from the REA in or about the mid-1980s. In January 2012,

he attempted to renew that license using the REA's online renewal system. Petitioner entered all required information, but, unbeknownst to him, the application did not process. Petitioner's license therefore expired on February 1, 2012. On about April 17, 2012, someone (not from the REA) informed petitioner that his license was no longer valid, and petitioner discovered that his renewal application had not processed properly. Petitioner then renewed his license. In completing the renewal application, petitioner was required to answer the question, "During any period of time when your license has been inactive or expired, have you conducted professional real estate activity?" Petitioner answered "no" to that question. However, the commissioner later determined that petitioner had, during the period when his license was expired, advertised commercial real-estate leasing opportunities and continued to operate CPM, his property management company.

## THE REA'S INVESTIGATION
## AND THE COMMISSIONER'S ORDER

In 2012 and 2013, the REA received complaints related to petitioner's property-management activities. It initiated an investigation and issued a notice in 2014, which the REA amended a few months later, of intent to revoke petitioner's principal broker license. The REA alleged in the amended notice that petitioner had answered falsely when he stated, in his 2012 license-renewal application, that he had not engaged in professional real estate activity during the February through mid-April period when his license was expired but CPM continued to actively manage properties under petitioner's direction and control. The REA also alleged other statutory and regulatory violations.

Petitioner moved to dismiss the notice, asserting, among other things, that he "was exempt from having a license for his management activities" because he "has an ownership interest in the properties which he managed as well as being the managing member of the projects (limited liability companies) for which he managed properties." An ALJ denied petitioner's dismissal motion, and the case went to hearing in late 2014. The ALJ issued a proposed order in

March 2015, which the commissioner adopted as his final order in June of that year.

In the final order, the commissioner rejected petitioner's assertion that his property-management activities were exempt from regulation under ORS chapter 696 because of his interests in the five companies that CPM managed. The commissioner acknowledged that petitioner, "either directly or indirectly, held partial ownership in each of the subject properties." Nonetheless, the commissioner reasoned that those ownership interests did not exempt petitioner's property-management activities from regulation under ORS chapter 696 for the following reasons.

First, the commissioner determined that petitioner had engaged in "professional real estate activity," that is, property management performed "for another and for compensation." ORS 696.010(14). Thus, the commissioner considered whether petitioner's property-management activities were nonetheless exempt under ORS 696.030(27), which applies to an individual who is a managing member of an LLC who manages that LLC's real estate. With respect to the Lakepointe and Westec properties, the commissioner found, appellant's interest was as "a trustee or co-trustee of a family trust, rather than an LLC." Accordingly, the commissioner concluded, the ORS 696.030(27) exemption did not apply. With respect to both Vista Ave and McKenna, the commissioner noted that petitioner himself was not a member of the LLC that owned the properties (340 Vista, LLC) but, instead, had an interest only as a member of the Berrey Family, LLC, which itself was a member of 340 Vista, LLC. The commissioner concluded that the ORS 696.030(27) exemption does not apply to "a managing member of a third party LLC holding membership in an LLC which then owns the subject real estate to be managed."

The commissioner engaged in a different analysis with respect to the Candalaria properties, which are owned by Candalaria South, LLC, of which petitioner is the managing member. Recognizing that the exception in ORS 696.030(27) otherwise "would appear to" apply to petitioner's activities in managing those properties because of petitioner's status as managing member of the LLC,

the commissioner considered in what capacity petitioner was serving when he managed the Candalaria properties. The commissioner concluded that petitioner "was acting as an employee of CPM, rather than as a managing member of the LLC(s), when he engaged in property management activities." Accordingly, the commissioner ruled, petitioner was "not entitled to the exemption provided by ORS 696.030(27)."

Having determined that petitioner's property-management activities were not exempt from regulation, the commissioner proceeded to assess whether petitioner had committed any of the violations alleged in the 2014 notice. Although he rejected a few of the REA's allegations, he ultimately concluded that petitioner had committed many of the alleged violations. The commissioner summarized his conclusions as follows:

> "[Petitioner]: (1) engaged in incompetence and untrustworthiness in performing property management activities, (2) committed one or more acts of dishonest conduct related to his fitness to conduct property management, (3) violated one or more affirmative duties owed to his clients, and (4) engaged in unlicensed property management activity. In addition, * * * [petitioner] engaged in numerous violations of OAR Chapter 863 Division 25 through his professional real estate activities."

Because of what he described as "the extensive number and egregious nature of the violations," the commissioner revoked petitioner's license rather than suspending it. The commissioner also imposed a $1,500 penalty under ORS 696.990 for the February through mid-April 2012 period during which petitioner "engaged in unlicensed professional real estate activities."

## WERE PETITIONER'S ACTIVITIES SUBJECT TO REGULATION?

In his first assignment of error on judicial review, petitioner challenges the commissioner's determination that his property-management activities were subject to regulation under ORS chapter 696 and the REA rules found in OAR chapter 863. Petitioner describes "the paradigm issue" in this proceeding as whether his activity "related to the

management of his co-owned properties is subject to regulation by the REA as a licensure issue." Petitioner contends that his "ownership interest" and status "as managing member under the TIC/LLC (Tenancy in Common/Limited Liability Company) structure" exempts him from such regulation. Specifically, petitioner contends that he "was an owner of the projects for which he was also a property manager, and therefore is exempt from holding a license to manage property in Oregon." Petitioner relies on three statutes to support that argument. First, he points to the definition of "professional real estate activity," which applies only to services that an individual performs "for another." ORS 696.010(14)(h). Second, he cites ORS 696.030(1), which creates an exemption from certain regulation and provides that—for the purposes of that statute—an "owner of real estate" includes an individual who owns the property together with other individuals through a tenancy in common. ORS 696.030(1)(b)(B).[4] Third, petitioner relies on the provision in ORS 696.030(27) that exempts from certain regulation an individual who is a managing member of an LLC and who manages the LLC's property.

We begin by addressing petitioner's contention that his indirect ownership interests in the properties other than Candalaria allowed him to manage those properties even while his license was inactive. We reject that contention for the following reasons.

The preliminary question is whether, as petitioner contends, his conduct in managing the Vista Ave, McKenna, Lakepointe, and Westec properties did not count as "professional real estate activity" as it is defined in ORS 696.010(14):

"'Professional real estate activity' means any of [specified] actions, when engaged in for another and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation, by any person who:

---

[4] ORS 696.030(1)(b)(B) was added to the statute in 2013. Or Laws 2013, ch 145, § 10. However, before the 2013 amendments, ORS 696.030(2) (2011) provided that ownership by "more than one person by *** tenancy in common *** shall be construed as that of a single owner for the purposes of this section." Neither party has argued that the 2013 change in wording is material to the issues in this case.

"*****

"(h)   Engages in management of rental real estate[.]"

Petitioner asserts that his management of the properties did not constitute "professional real estate activity" because he was "an owner" of the properties and therefore was not managing them "for another." We understand petitioner's fundamental premise to be that an individual who has *any* type of partial ownership interest in property can manage that property without being deemed to be doing so "for another"—that is, for the other persons who also have partial ownership interests in the property.

ORS chapter 696 does not include a definition of what it means for real estate activity to be performed "for another." However, in this context, the word "another" ordinarily would refer to a person other than the individual engaged in the real estate activity at issue and the word "for" ordinarily would refer to the performance of a service for the benefit of, or on behalf of, that other person. That is, the words of ORS 696.010(14), given their ordinary meaning, appear to contemplate that an individual engages in professional real estate activity if the individual engages in certain activities, including the management of rental properties, on behalf of or for the benefit of somebody other than the individual. Nothing in that definition suggests—as petitioner argues—that an individual who manages property in which he or she has a *partial* ownership interest is not managing the property "for" the other owners in addition to managing it for the individual's own benefit.

Turning to context, other provisions of ORS chapter 696 generally reflect the legislature's view that "the activity of persons seeking *to assist others*, for compensation, to deal in real estate in this state [is] a matter of public concern." ORS 696.015(1) (emphasis added). In keeping with the goal of ensuring "that professional real estate activity is conducted with high fiduciary standards," *id.*, the legislature has mandated that individuals engaging in such activity—including the management of rental property—have a real estate license. ORS 696.010(14)(h); ORS 696.020(2). Those provisions demonstrate the legislature's general intention that individuals engaging in real estate activity on behalf

of others be licensed and held to high regulatory standards. Thus, the focus is on whether the real estate activity is conducted for another person who could be harmed or put at risk by an unlicensed individual's misconduct or poor performance. Petitioner's contention that an individual who manages property in which he or she has any type of *partial* ownership interest is not managing that property "for another" (the other owners) is difficult to square with that legislative focus.

Additional context is provided by the list of exemptions in ORS 696.030, which describes specific conduct that is not subject to (among other things) the requirement that an individual be licensed to engage in professional real estate activity. Those exemptions include two related to ownership interests. ORS 696.030(27) exempts an individual who is the sole member or a managing member of an LLC who manages real property owned by the LLC. And ORS 696.030(28) exempts an individual who is a partner in a partnership and who manages the partnership's real estate. Those provisions would not be necessary if, as petitioner suggests, an individual's partial ownership interest in property—in any form—is sufficient to mean that, when the individual manages the property, the individual is not doing so "for another" for purposes of ORS 696.010(14).

In sum, based on the text and context of the definition of "professional real estate activity," we reject petitioner's broad assertion that an individual who has *any* type of partial ownership interest in rental property can manage that property without being deemed to be doing so "for another"—the other people who also have ownership interests in the property.[5]

We turn to petitioner's property-specific arguments. First, petitioner asserts that his partial ownership interest

---

[5] To be clear, we mean by this statement to reject only the broad—indeed, global—argument that we understand petitioner to make: that an individual having *any* partial ownership interest in property can manage the property without doing so "for another." We need not, and do not, address types of co-ownership situations other than those expressly addressed in this opinion. That is, we do not address whether individuals holding *specific* types of partial ownership interests in property (other than those discussed here) may lawfully be able to manage that property without a real estate license.

in Vista Ave allowed him to manage that property without being licensed. We disagree. Petitioner's interest in Vista Ave was indirect; petitioner had a membership interest in Berrey Family, LLC, which had a 14.48 percent voting interest in 340 Vista, LLC, which owned Vista Ave. Petitioner has not explained why that indirect ownership interest in Vista Ave, through a chain of LLCs, meant that he was acting solely on his own behalf—and not "for" the other owners—when he managed that property. Petitioner's ownership interest in McKenna likewise ran through the Berrey Family, LLC, and 340 Vista, LLC, and we conclude for the same reasons that he engaged in real estate activity "for another" when he managed that property.

Petitioner's ownership interests in Lakepointe and Westec were structured somewhat differently. Both Lakepointe and Westec were owned by groups of owners through a tenancy-in-common agreement. However, petitioner's interest was not through LLCs (as with Vista Ave and McKenna). Rather, one of the owners of Lakepointe was "Dan L. and Fran H. Berrey, Trustees," and one of the owners of Westec was "Dan & Fran Berrey, Trustees." But the commissioner determined that individuals who hold property (along with others, in a tenancy in common) as trustees of a trust are not exempt from licensing requirements if they manage that property, and petitioner has not explained why that conclusion is wrong. In sum, petitioner has not established that the commissioner erred when he determined that petitioner managed the Vista Ave, McKenna, Lakepointe, and Westec properties "for another" and, therefore, petitioner was required to have a real estate license to do so.

Petitioner also argues that, even if he might otherwise be considered to be engaged in professional real estate activity for which a license is required, at least some of his conduct was exempt from regulation. First, he points to ORS 696.030(1)(b)(B), which, in conjunction with ORS 696.030 (1)(a), creates an exemption for a "nonlicensed individual who is a full-time employee of an owner of real estate"—"owner of real estate" being defined to include more than one individual who own property through a tenancy in common—and who engages in activity involving only that employer's property. That exemption does not apply here

because petitioner is not a full-time employee of any of the owners of the properties at issue.

We turn to the exemption on which petitioner primarily relies: ORS 696.030(27), which provides that certain ORS chapter 696 provisions do not apply to an individual who is a managing member of an LLC "and who is engaging in the *** management of the real estate of the [LLC]." Petitioner contends that he qualified for that exemption for the Vista Ave and McKenna properties because his ownership interest in those properties was through LLCs. The difficulty for petitioner lies in the chains of ownership for the properties. For both Vista Ave and McKenna, 340 Vista, LLC, was an owner. Even assuming that Vista Ave and McKenna could therefore be considered "the real estate of" 340 Vista, LLC, the ORS 696.030(27) exemption would apply only to an "individual who [was] *** a managing member" of *that* LLC. And petitioner was not a managing *member* of 340 Vista, LLC (although he was its initial manager); indeed, he could not have been, as he was not a member of the LLC but had an interest in it only because of his membership in the Berrey Family, LLC, which *itself* was a member of 340 Vista, LLC. Accordingly, the commissioner did not err when he concluded that petitioner was not entitled to the ORS 696.030(27) "managing member" exemption for property-management activities related to Vista Ave and McKenna. The commissioner also concluded that the exemption did not apply to Lakepointe and Westec, in which petitioner's ownership interests were through trusts, not LLCs, and petitioner has not identified any flaw in that conclusion.

To recap so far: Petitioner has not established that the commissioner erred when he determined that petitioner engaged in "professional real estate activity" when he managed the Lakepointe, Westec, Vista Ave, and McKenna properties "for another," ORS 696.010(14), and that petitioner's activities with respect to those properties were not exempt under ORS 696.030(27).

We turn to petitioner's management of the Candalaria properties. As noted, petitioner is the managing member of Candalaria South, LLC, and the ORS 696.030(27) "managing member" exemption therefore could apply to petitioner if

he were "engaging in the * * * management of the real estate of" Candalaria South LLC. In his final order, the commissioner determined that the exemption nonetheless did not apply to petitioner because he was acting as an employee of CPM, rather than as managing member of Candalaria South, LLC, when he managed the Candalaria properties. We need not determine whether that rationale is sound. On judicial review, the commissioner observes correctly that the legislature did not enact the "managing member" exemption until 2009, Or Laws 2009, ch 136, § 1, and the specific violations that the commissioner found that involved the Candalaria properties (which petitioner challenges in his second and fourth assignments of error) occurred earlier. Petitioner implicitly acknowledges that, because of the timing, the "managing member" exemption does not apply to the Candalaria violations. Nonetheless, he argues that his activities involving those properties did not constitute "professional real estate activity" for purposes of ORS 696.010(14) because he had an ownership interest in the properties. We are not persuaded. Petitioner's ownership interest in the Candalaria properties was, as with the Lakepointe and Westec properties, indirect and related to petitioner's status as a trustee. The Candalaria properties are owned by Candalaria South, LLC, which has several members, one of which is "Dan L. and Fran H. Berrey, Trustees." As explained above, petitioner has not identified a flaw in the commissioner's determination that petitioner's indirect and partial interests in Lakepointe and Westec were insufficient to establish that he was not managing those properties "for another." Petitioner has not explained why that same reasoning does not apply to the Candalaria properties.

## THE OTHER ALLEGED VIOLATIONS

In his remaining assignments of error, petitioner challenges the commissioner's determination that petitioner violated various statutory and regulatory provisions. We briefly address petitioner's arguments below, starting with those he makes in conjunction with his third assignment of error.

In that third assignment, petitioner challenges the commissioner's determination that petitioner "[c]ommitted

an act of fraud or engaged in dishonest conduct substantially related to the fitness of [petitioner] to conduct professional real estate activity"—a type of conduct that can form the basis for sanctions including the revocation or suspension of a real estate license. ORS 696.301(14).[6] The commissioner based that determination on two events: (1) petitioner's 2012 indication, on his license renewal application, that he had not engaged in professional real estate activity during the period of time between expiration and renewal of his license; and (2) petitioner having taken $483,000 in loans from Westec to invest in another project, without first obtaining proper authorization.

With respect to the first of those events, the commissioner found that, during the pertinent time, petitioner had continued to advertise commercial real-estate leasing opportunities.[7] Petitioner does not challenge that factual finding. Rather, he contends that he advertised only those properties in which he claimed an ownership interest and, therefore, he responded truthfully when he said that he did not engage in "professional real estate activity" "for another" while his license was expired. That argument fails for the reasons set out above; petitioner's indirect ownership interests did not mean that he could manage those properties without a license.[8]

---

[6] The 2003 version of ORS 696.301 included a similar provision, authorizing sanctions for a licensee determined to have "[c]omitted an act or conduct substantially related to the *** licensee's fitness to conduct professional real estate activity *** that constitutes or demonstrates bad faith or dishonest or fraudulent dealings." ORS 696.301(31) (2003). That statutory provision was in place at the time that petitioner took loans from Westec, as described below. Neither party has contended that the differences in wording between ORS 696.301(14) (2015) and ORS 696.301(31) (2003) affect the analysis of whether petitioner engaged in fraudulent or dishonest conduct for which he could be sanctioned, and we do not perceive any distinction between the statutes that is material to the issue presented here.

[7] As noted, "professional real estate activity" includes "management of rental real estate." ORS 696.010(14)(h). Such management includes representing the property's owner by advertising the property for rent or lease. ORS 696.010 (11)(a)(A).

[8] With respect to that violation, the commissioner did not distinguish among the properties advertised, and the final order does not specify whether the properties advertised may have included Candalaria. Petitioner does not assert that the properties advertised in 2012 included Candalaria; nor does he argue that any such advertisement would have been exempt from regulation under ORS 696.030(27).

Petitioner also argues that he believed that his activities were exempt from regulation because of his ownership interests in the properties. Even if that "belief was in error," petitioner argues, his statement on the renewal form "cannot be determined to be 'fraudulent' or 'dishonest' conduct based upon his good-faith belief that a license was not required" for his activities. That argument fails in light of the commissioner's finding (which the record supports) that petitioner did not have such a good-faith belief. Finally, petitioner suggests that no evidence links his claimed "misunderstanding" of licensing requirements "and his ability to appropriately conduct real estate activities for others"; he also suggests—based on statutes related to a different profession—that conduct qualifies as "dishonest" or "fraudulent" only if it results in injury or damage to another person, which was not caused by his inaccurate representation on the license renewal application. We reject those arguments without discussion.

The second act by petitioner that the commissioner found to constitute fraudulent or dishonest conduct was taking unauthorized loans from Westec. The commissioner determined that, because petitioner engaged in that conduct "in his capacity as a professional property manager" in a manner that "relate[d] directly to his honesty and integrity in dealing with client funds," the conduct was "substantially related to his fitness to conduct professional real estate activity."

On judicial review, petitioner contends that the commissioner's finding that he took those loans "without authorization" is not supported by substantial evidence. Petitioner asserts, citing statements of some Westec investors, "that he did, in fact, have the approval of the majority of the owners" of Westec. We reject petitioner's argument without extended discussion, as it essentially asks us to reweigh the evidence and substitute our assessment for the commissioner's, which we will not do. *Tri-County Center Trust*, 298 Or App at 836.

In his fourth assignment of error, petitioner contends that the commissioner erred when he concluded that petitioner had violated certain provisions of OAR chapter 863. In his fifth assignment of error, petitioner argues that

the commissioner erred when he concluded that petitioner had violated certain provisions of ORS chapter 696. We reject each of the arguments that petitioner makes in conjunction with those two assignments of error without discussion, noting only that petitioner's arguments are largely premised on his own view of the evidence and do not grapple either with the commissioner's pertinent factual findings or with the commissioner's expressed rationale for concluding that petitioner had violated the rules and statutes.

Petitioner's second assignment of error challenges the commissioner's determination that petitioner demonstrated incompetence and untrustworthiness in performing property management activities, which constitutes a ground for discipline under ORS 696.301(12). The commissioner's incompetence/untrustworthiness assessment was partly based on his conclusion that petitioner had committed the regulatory and statutory violations that are the subjects of petitioner's third, fourth, and fifth assignments of error. With respect to each of those violations, the commissioner separately assessed whether the improper conduct "also constitute[d] incompetence or untrustworthiness." The commissioner answered that question affirmatively, determining that petitioner's regulatory violations "demonstrate[d] a lack of basic competence and knowledge of the rules and regulations relating to professional real estate activity, specifically those applicable to property managers." In addition, the commissioner determined, petitioner's "lack of candor" about certain security deposits, loan authorizations, and "potential self-dealings" established "a lack of trustworthiness in dealing with clients (the property owners) and the [REA]."

In challenging the commissioner's incompetence/ untrustworthiness determination, petitioner first argues that he did not commit the specific violations that are also the subjects of his third, fourth, and fifth assignments of error. We reject those arguments in this context for the same reasons we rejected them, largely without discussion, in association with those other assignments. Petitioner also challenges the commissioner's determination that he committed two additional violations: (1) by failing to maintain records of loans taken from Westec, and (2) by failing to

maintain a contractually required minimum balance in a client trust account. We reject those challenges, too, without discussion.

Finally, in his sixth assignment of error, petitioner contends that the commissioner erred when he revoked petitioner's license and assessed a civil penalty. Petitioner asserts that the record does not include a sufficient factual basis for the commissioner's determination that revocation was warranted under ORS 696.301 (identifying grounds for discipline, including license revocation) and ORS 696.396 (2)(c) (authorizing revocation only where a violation has resulted in "significant damage or injury," exhibits incompetence, dishonesty or fraudulent conduct, or involves conduct substantially similar to that for which the licensee was previously disciplined) because petitioner's conduct demonstrated dishonesty, untrustworthiness, and incompetence. We disagree. The record supports the commissioner's determination that petitioner repeatedly violated the statutes and rules that govern professional real estate activity; it also supports his determination that those violations were not merely the result of inadvertence or good-faith mistake. We reject petitioner's challenge to the revocation and imposition of civil penalty without further discussion.

Affirmed.